CARPENTERS PENSION TRUST FOR SOUTHERN CALIFORNIA, Plaintiff,

v.

Brenda Ann KRONSCHNABEL, Daniel Jerome Kronschnabel, Joaquin Alonzo Tirre, and Geraldine Lee Tirre, Defendants.

CARPENTERS PENSION TRUST FOR SOUTHERN CALIFORNIA, Plaintiff,

v.

Bill YACAWYCH and Julie Mary Yacawych, Defendants.

Nos. CV 76–3593–WMB, CV 76–3997–WMB.

United States District Court, C. D. California.

Oct. 31, 1978.

S. B. Gill, Bakersfield, Cal., Howard M. Kates, Encino, for defendants.

## MEMORANDUM OPINION

WM. MATTHEW BYRNE, Jr., District Judge.

These two cases call for the resolution of the identical question of law involving federal pension regulations and the application of California community property law. Plaintiff, Carpenters Pension Trust for Southern California, seeks to nullify two state court divorce decrees distributing pension benefits administered by it on the ground that federal regulation under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. preempts such state action.

The factual settings giving rise to these actions are similar. Plaintiff in both cases is an employee pension benefit plan within the meaning of Section 3(a) of ERISA, 29 U.S.C. § 1002(2). Defendant in 76–3593–WMB, Brenda Ann Kronschnabel, married Daniel Jerome Kronschnabel in 1964. A final judgment of dissolution of their marriage was entered by the Kern County Superior Court on March 9, 1977. In 76–3997–WMB, a judgment of dissolution of the marriage of defendant Julie Mary Yacawych and Bill Yacawych was entered in the Los Angeles Superior Court on April 5, 1975.

Both Daniel Kronschnabel and Bill Yacawych were participants in the plaintiff's trust plan for a portion of the period during which they were married to the respective defendants.[1] Bill Yacawych is currently receiving pension benefits under the plan, and Daniel Kronschnabel will, in the future, be entitled to such benefits. In both cases, the

Charles P. Scully, San Francisco, Cal., Lawrence Teplin, Cox, Castle, Nicholson & Weekes, Los Angeles, Cal., for plaintiff.

[1]. Defendant Julie Mary Yacawych has urged that 29 U.S.C. § 1144(a) (1976) is inapplicable to her case by virtue of § 1144(b)(1), which bars the application of the preemption section to any cause of action arising before January 1, 1975, because divorce proceedings were commenced in Los Angeles Superior Court prior to that date. Defendant Brenda Ann Kronschnabel also claims that § 1144(b)(1) applies to her case, on the ground that a major portion of her community property interest in the trust funds was acquired prior to January 1, 1975. Because the Court holds that § 1144(a) does not preempt the state court dispositions of the community interests in the instant funds, it is unnecessary to pass on these contentions regarding § 1144(b)(1).

courts found that the pension benefits were community property and granted to each spouse one-half of the community property value of tne benefits in the trust. In the Kronschnabel dissolution judgment, the court stated tnat it "reserves and retains jurisdiction over the issue of the payment of the community property benefits in the Carpenters Pension Trust for Southern California" to both Brenda and Daniel Kronschnabel.

Brenda Kronschnabel sought to have the Trust joined as a party claimant in the dissolution proceedings. The state court denied the motion but in its order noted:

"[I]t would appear that service of written notice of the wife's interest in the pension, when paid, would be sufficient to place the trust on notice. Thereafter it would seem that payment without considering the divorced wife's interest would be at the trust's peril. This would also alleviate the 'intolerable burden' of monitoring the tangled marital affairs of potential pensions.

It is the Court's opinion that service of a certified copy of the Interlocutory Decree would be sufficient notice."

Defendants contend that the service of the dissolution judgments places the Trust on notice of the community nature of the benefits. Therefore, the defendants assert that they will have a cause of action against the Trust if further payments are made only to the participating spouse.

Plaintiff brought these actions as a fiduciary under 29 U.S.C. § 1132(a)(3)(B)(ii). It seeks a judgment declaring invalid those parts of the *Yacawych* and *Kronschnabel* judgments insofar as they purport to: (1) allocate interest and shares in future benefits payable under the plan to one other than the participating spouse; (2) reserve and retain jurisdiction over the issue of payment of the community property benefits in the Trust; and (3) have any binding or legal effect upon the Trust.

The Trust contends that the judgments of dissolution constitute state law and action which attempts to regulate an employee pension plan and is thus expressly prohibited by the preemption provision of ERISA, 29 U.S.C. § 1144(a). The Trust further contends that to order benefit payments to one other than the spouse who participated in the plan will impose an impermissible burden on the Trust which will affect all pension plan participants by increasing administrative costs, and thus reducing the total value of the trust fund.

In each case plaintiff has moved for summary judgment and defendant has filed a motion to dismiss. The parties have stipulated that there remain no genuine issues as to any material fact.

ERISA provides, with certain exceptions here inapplicable, that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975." 29 U.S.C. § 1144(a).

"State laws" preempted by this section are defined in 29 U.S.C. § 1144(c)(1) to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . ."

The term "State" is defined in 29 U.S.C. § 1144(c)(2) as including "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

The Supremacy Clause states that the Constitution and federal laws "made in Pursuance thereof . . .," and treaties "made, under the Authority of the United States, shall be the supreme Law of the Land . . ." U.S.Const. art. VI, cl. 2. The Clause establishes the essential tenet of federalism that state and local laws which impinge on an exclusive federal domain are not enforceable. This principle is referred to as the doctrine of preemption. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Lockheed Air Terminal, Inc. v. City of Burbank,* 457

F.2d 667 (9th Cir. 1972). Whether the doctrine is applicable depends upon the intention and purpose of Congress. Congress may either expressly or impliedly declare that state law is prohibited. Even if state action is not expressly or impliedly preempted by Congress, a state law is void to the extent it actually conflicts with a Congressional enactment. *Ray v. Atlantic Richfield, supra,* 98 S.Ct. at 994; *Malone v. White Motor Corp.,* 435 U.S. 497, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). The preemption doctrine thereby ensures that matters of valid Congressional concern will be accorded national uniformity of treatment. *See Southern Pacific Co. v. Arizona,* 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); *Mayo v. United States,* 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943).

The broad language of 29 U.S.C. § 1144(a) reflects Congress's desire for national uniformity in the administration of employee pension funds.[2] Signed into law in 1974, ERISA sought to correct abuses in pension fund administration which had cast a cloud of uncertainty and insecurity over the retirement plans of many Americans. Among the more serious pre-ERISA problems were: inadequate participation; overly strict or deceptive vesting rules; insufficient funding; and inept or corrupt management of plan assets.[3]

Clearly Congress intended that ERISA would preempt "state laws" that purport to regulate the *administration* of pension plans. *See, e. g., Azzaro v. Harnett,* 414 F.Supp. 473 (S.D.N.Y.1976). In contrast, "state laws," including dissolution judgments under a community property system, affecting *distribution* of vested pension benefits do not appear to be within the scope of the preemptive intent of the Act, nor at odds with the significant interest of achieving national uniformity in regulating employee retirement plans.

The court concludes that dissolution judgments disposing of pension benefits were not intended by Congress to be preempted. In 29 U.S.C. § 1144(c)(2) "State" is defined as any State instrumentality which "purports to regulate, directly or indirectly, the *terms and conditions of employee benefit plans covered by this subchapter.*" (Emphasis added). The distribution by a dissolution decree of benefits earned by the community during coverture does not regulate even indirectly the "terms and conditions" of the instant trust plan. The phrase "terms and conditions" pertains to the plan's administration and operations, and does not relate to whether the participant's benefits are to be distributed as community or separate property.

With the exception of joint and survivor annuities, ERISA does not require a particular form of distribution of vested benefits, but merely provides that they be distributed on a timely basis.[4] Nor does the Act in any way determine the possible effects of a participant spouse's divorce. Plaintiffs contend that by adopting 29 U.S.C. § 1055 regarding joint and survivor annuities Congress provided the sole rights which a nonparticipant spouse could have in plan benefits, and that therefore any state laws affecting these rights would be preempted.

There is no merit to this contention. Section 1055 merely requires that if a plan provides for benefits paid as annuities the plan must also provide for payment of benefits in the form of joint and survivor annuities. It creates no vested rights for a nonparticipating spouse and merely is elective for the participant, who in fact must be given the right to reject such a

---

**2.** Broad preemption would prevent conflicting regulations over interstate plans, avoid litigation that would result from piecemeal preemption, and serve the emerging federal interest in pension plans reflected in the authorization for research studies concerning further pension reform legislation. See 29 U.S.C. § 1143 (1976); letter from James Hutchinson, Pension and Welfare Benefit Programs Administrator, Department of Labor, to William Barnes, California Corporations Commissioner, dated July 14, 1976, reprinted at 96 BNA Pension Rptr. R–1.

**3.** See S.Rep. 93–127 93rd Cong., 1st Sess. 3–4 (1973), reprinted at U.S.Code Congressional and Administrative News, 1974, p. 4838 (1973).

**4.** 29 U.S.C. § 1056(a) (1976).

form of payment, 29 U.S.C. § 1055(e). As such it tells us nothing about Congress's intent regarding the rights of a nonparticipant spouse or its intention to preempt state community property laws. This court should not read into the provision that which is not there.[5] As the court in *In re Marriage of Pardee,* 408 F.Supp. 666, 669 n.5 (C.D.Cal.1976), noted when faced with the same argument as advanced here: "The trust divines an intention from this section [1055(a)] (which appears merely to attempt to provide protection for surviving spouses) to invalidate community laws. If that was the intention, Congress surely selected an indirect and cryptic method of expressing its views."

In addition, plaintiff contends that the operation of California's community property laws, as reflected in the dissolution judgments herein, conflict with certain ERISA provisions and impermissibly inject diversity into what is meant to be a uniform set of rules with regard to pension benefit payments. Specifically, plaintiff urges that state court dissolution judgments, allocating pension benefits pursuant to state community property laws, operate as an assignment and thus conflict with 29 U.S.C. § 1056(d)(1) which provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

▬ The statutory context suggests that the anti-assignment proscription of Section 1056(d)(1) was aimed at preventing employees from assigning away their future income security for short-range benefits, thereby neutralizing ERISA's whole arsenal of provisions designed to safeguard pension funds. Community property laws do not act as an assignment but rather prescribe property rights in pension benefits as between spouses. Clearly, Section 1056(d)(1) cannot be read to outlaw as prohibited assignments dissolution decrees issued pursuant to the state's community property laws. *See In re Marriage of Pardee, supra,* 408 F.Supp. at 668 n.5. And *see Phillipson v. Board of Administration, Public Employees' Retirement System,* 3 Cal.3d 32, 43, 89 Cal.Rptr. 61, 68, 473 P.2d 765 (1970).

Furthermore, the plaintiff has failed to point to any part of the legislative history of ERISA evidencing a congressional intent to preempt state application of community property laws to the payment of pension benefits. Rather, that history "suggests that the congressional interest in uniformity was confined to matters involving the minimum standards of pension plans and the safeguards necessary to secure equitable administration. 1974 U.S.Code Congressional and Administrative News, 4639 *et seq.* An intent to regulate pension plans does not necessarily include an intent to control the state's distribution of family assets in divorce and separation proceedings." *In re Marriage of Pardee,* 408 F.Supp. at 669 n.4.[6]

The cases relied upon by plaintiff where the United States Supreme Court discerned a Congressional intent to preempt state community property laws, unlike this case, involved payments made directly by the government to participants whose discretion to select beneficiaries was a signal feature of the legislation.

In *Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), the United States Supreme Court held that Texas's community property laws were preempted by federal law granting absolute ownership to a surviving co-owner/spouse of a United States Savings Bond. The Court found that the survivor's right of absolute ownership was an important inducement to the sales of savings bonds and stressed the role such sales play in the management of the

---

5. *See* Reppy, "Community and Separate Interests in Pensions and Social Security Benefits after *Marriage of Brown* and ERISA," 25 U.C. L.A. L.Rev. 417, 519–23 (1978).

6. The character of a non-employee spouse's interest in pension benefits differs considerably from the interest asserted by other claimants to the benefits, such as business creditors. *See Stone v. Stone,* 450 F.Supp. 919, 926–28 (N.D. Cal.1978).

federal debt.[7] In this case, the court can sense no such similar compelling purpose to be served by preempting the operation of California's community property laws.

In *Wissner v. Wissner,* 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), the Court allowed a serviceman to select the beneficiary of his own government life insurance policy regardless of state law. The imposition of California's community property laws in that case, the court concluded, "nullifies the soldier's choice and frustrates the deliberate purpose of Congress." *Id.* at 659, 70 S.Ct. at 400. Here, Congress's intention to preempt community property laws is far from deliberate; and the participant's "choice" is not involved here; the ex-husbands have not sought to invalidate the state court dissolution decrees, nor would they be freed from their duty of paying to their spouses their community share even if the Trust were relieved from the obligation of directly making the payments.

■ The administrative burdens and increased costs imposed on plaintiff by the allocation of benefits prescribed by the dissolution judgments are insufficient to preclude the application of California's community property laws to pension benefits. While no doubt the uniformity of standards and procedures provided by ERISA greatly benefit pension fund administration, the reduction of the administrator's duties was not the pre-eminent purpose of ERISA. Rather, the primary beneficiaries of ERISA were to be the participants themselves, and, indirectly, those who look to the participant for their support and security. Community property laws are consistent with this concept, for they seek to take account of the contributions of the nonworking spouse to the prosperity of the marriage partnership and invest that spouse with an equal right to succeed to the property of the community upon its dissolution.[8]

■ The field of domestic relations, including the dissolution of marriage and attendant division of property accumulated by the community, is "peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts." *Buechold v. Ortiz,* 401 F.2d 371, 373 (9th Cir. 1968). *See Ex parte Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890). The California Supreme Court recently affirmed its long standing recognition that pension rights attributable to the employment of one spouse during marriage are community property. *See In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). This established state policy of including pension benefits in the pool of community property generated by husband and wife during marriage should not be emasculated cavalierly by the court where neither the language of the federal statute, nor the underlying policies of preemption require it.

For this court to prevent the California courts from effectuating the state's community property laws in the absence of a clear message from Congress would be to undermine the principles of federal-state comity from which the preemption doctrine draws its authority in the first instance.

Accordingly, judgment will be entered for the defendants in both actions dismissing plaintiffs' complaint.

---

**7.** "If the State can frustrate the parties' attempt to use the bonds' survivorship provision through the simple expedient of requiring the survivor to reimburse the estate of the deceased co-owner as matter of law, the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money." 369 U.S. at 669, 82 S.Ct. at 1093.

**8.** *Contra, Francis v. United Technologies Corp.,* C 77–1504 C.F.P. (N.D.Cal. Sept. 19, 1978).