[Civ. No. 40366. Second Dist., Div. Two. Feb. 20, 1973.]

HORACE L. BALL, as Executor, etc., et al., Plaintiffs and Appellants, v. McDONNELL DOUGLAS CORPORATION, Defendant and Respondent.

## COUNSEL

Rhodes, Barnard & Maloney, and J. William Maloney for Plaintiffs and Appellants.

Louis Lieber, Jr., and Eberhard Schmoller for Defendant and Respondent.

## OPINION

**COMPTON, J.**—In 1964, plaintiff Elaine Patterson (now known as Elaine Patterson Costello) obtained an interlocutory decree of divorce awarding

her, among other property, a one-half interest in her husband's account with defendant McDonnell Douglas Corporation's Salaried Employees Pension Plan.

Donald M. Patterson, the husband, had been employed by McDonnell Douglas Corporation for many years and by the time of the divorce his account with the pension plan was valued at $12,678.

In issuing its decree dividing the account as community property, the court as to plaintiff's one-half provided inter alia "[T]here shall be no immediate payment thereon; *Said payment shall await the distribution by the Administrator of the Pension Fund . . . as done in the normal course of events . . .* Plaintiff's only interest in the said fund shall be her right to receive the sum of $6,339.00 and when plaintiff has received payment from the said Administrator totalling said $6,339.00, plaintiff shall have no further right to any of the . . . proceeds from said fund." (Italics added.)

The decree became final on May 7, 1965, without any modification.

Donald Patterson's employment with defendant was terminated on May 14, 1965, and thus he became eligible for benefits under the "Deferred Pension" provisions of the plan. Several options of an actuarially equivalent value were available on election with the amount of the periodic pension payments varying primarily according to what future age was selected for commencing the payments and what provisions were made for survivors or beneficiaries. The relevant alternatives and Patterson's actions in connection therewith will be discussed *infra*.

Patterson died February 16, 1969, without having received any payments and defendant has since refused to pay any benefits to either Elaine Patterson Costello, the former wife, or to Horace Ball, executor of Patterson's estate. The latter two thus joined as plaintiffs in an action for declaratory relief. They appeal from a judgment in favor of defendant.

On July 20, 1965, following his termination, a "Certificate of Termination Benefit" was mailed to Patterson advising him that when he reached age 65, on August 1, 1971, he would receive the basic benefit of a life pension of $153.99 per month and that should he die prior to that date his beneficiary would receive a benefit in the amount of $14,760.65. In an accompanying letter he was told that he could, if he so elected, increase the monthly payments to $172.18 by waiving the death benefit.

Rule 4(b)(2) of the pension plan required that: "The former Member's application . . . [electing the alternative benefit] must be filed with the

Secretary of the Board within 30 days after he receives notification from the Retirement Board that he is entitled to [the basic benefit] *and, shall upon expiration of such period become irrevocable.*" (Italics added.)

In addition to the option mentioned, the plan also provided in Rule 4(D)(1) for an option as follows:

"A pension of equivalent actuarial value payable to him for his life, but in the event of his death within ten years after the effective date of the pension, payable to his beneficiaries for the balance of the ten-year period, but in no event beyond the date on which he would have attained age 75 had he lived. . . . Such election shall be filed with the Secretary of the Board at any time prior to age 65 or the beginning date of the Pension, whichever is earlier." We will refer to this option as the 120 certain payment provision.

Sometime after July 20, 1965, and prior to August 24, 1965, the retirement board received an undated letter from Patterson electing to accept the higher monthly benefit and waiving the death benefit.

The company replied by letter dated August 24, 1965 enclosing an amended "Certificate of Termination Benefit" which eliminated the death benefit and provided for the larger pension.

Early in October of 1968, Patterson telephoned the defendant and indicated that he now wished to opt for a lower but immediate pension payment. Defendant sent him a new election form and advised him that the 120 month certain payment option was still available to him. Patterson failed to execute any further election prior to his death.

The trial court agreed with defendant's position that Patterson had made a binding election and any liability for future benefits terminated on his death.

Both the executor and the former wife, albeit on differing grounds, attack the efficacy of Patterson's election.

█ It is first contended that the undated letter in which Patterson indicated his desire to waive the death benefit was not timely, being received by defendant more than 30 days following notification of eligibility.

The trial court specifically found that the election was timely and there is substantial evidence in the record to support such an inference. It is obvious that the board itself considered the election to be timely for they complied with the requested change in benefits. Since the benefits under each alternative were actuarially equal in value the board would have had no reason to prefer one over the other.

Further, the 30-day rule served only as a protection to the fund in that it prevented a member from increasing the risks to the fund by delaying decision as to death benefits and later deciding to take under the increased pension election. A party to a contract can waive a provision therein which is solely for its own protection. (*Knarston* v. *Manhattan Life Ins. Co.,* 140 Cal. 57 [73 P. 740]; 12 Cal.Jur.2d, Contracts, § 170; see also *People* v. *Ventura Refining Co.,* 204 Cal. 286 [268 P. 347, 283 P. 60].)

■ The executor of the estate argues that even if the waiver of the death benefit was effective, Patterson still had at the time of his death the option of selecting the 120 month certain payment program in lieu of the life pension. Thus he contends that as Patterson's personal representative he may now make that election.

This contention is totally lacking in merit. The pension plan document in Rule 4(D)(1), *supra,* specifically refers to the former member as the one having the option and gives no power to the executor. The particular alternative afforded by the rule provides for a pension for the life of the member with payment to the beneficiary if death occurs within 10 years *after* the effective date of the pension. Here death occurred before the effective date that Patterson had personally selected.

Throughout the entire plan the effective date of the pension and the death of the member are critical events around which the plan is structured. It would subvert the actuarial soundness of the fund to permit an executor after the death of the member to alter the operation of the plan in a manner not provided for in the plan.

The vested right to receive the higher pension at a fixed future date was adequate consideration for Patterson's implied waiver of any other benefits in the event he failed to survive that future date.

■ Plaintiff Costello's position is that the divorce decree made her the owner of one-half of the pension plan benefits up to a value of $6,339 and that on termination of the marriage her former husband, having lost management control over the community property, could not validly elect to change the pension distribution scheme so as to affect her interest.

The trial court found that under the terms of the interlocutory decree of divorce, Patterson retained the power to make the election that he did; that the right to an increased monthly pension was sufficient consideration for waiver of the death benefit; and the corporation could lawfully deal with Patterson without consultation with or approval of plaintiff Elaine Patterson Costello. We agree.

The decree simply fixed the present value of Patterson's right to receive

a monthly pension sometime in the future. It did not guarantee that the full value would be realized. The very nature of pension funds is that some recipients outlive the actuarial expectancy and others fall short.

The decree did nothing more than provide that as Patterson, "in the normal course of events" received benefits from the fund he would share them with his former wife up to the amount of $6,339. The decree did not provide for a lump sum payment to the former wife, nor did it fix a time when the payment would be made, nor did it require Patterson to make any provisions for her in the event of his death.

In making the election to take higher monthly payments, as permitted by the plan, Patterson was in no way waiving any right of the plaintiff to receive her share of the benefits. Her right to have $6,339 deducted proportionately from the monthly pension payments as they were paid to Patterson remained intact.

The divorce court had before it the parties and presumably a copy of the plan. Either party could have placed any facet of the plan before the court for its express consideration. Plaintiff in particular had an opportunity to point to the various elections under the plan and could have requested that the court direct that no election be made by the husband which could, however indirectly, result in extinguishment of eligibility to draw from the plan. This she failed to do.

The divorce court "exercised an authority to control the form of benefits which was requisite to the effective performance of its judicial duty to divide the community property." (*Phillipson* v. *Board of Administration*, 3 Cal.3d 32, at p. 48 [89 Cal.Rptr. 61, 473 P.2d 765].)

It should be pointed out that in the case at bar, as distinguished from *Phillipson*, Patterson did not have any accumulated contributions on deposit with the pension fund and thus he had no right to withdraw a lump sum. All contributions to the fund came from defendant. Unlike *Phillipson*, Patterson did not improve his own position to the detriment of the wife. The rights of each to benefit from the fund were tied together as during the marriage.

Under the provisions of the pension plan Patterson had the right to determine when, in the future, and in what amounts the benefits available to him would best serve his economic situation. It is clear that the divorce decree *did not* give plaintiff Costello a right to control Patterson's ability to

plan his future. She would have had no such control during the marriage and in the absence of a specific provision in the decree she gained no such right by virtue of the divorce.

■ Plaintiff maintains that waiver of the death benefit was a testamentary disposition of her share of the community property in contravention of Probate Code section 201, which provides that on the death of one spouse one-half of the community property belongs to the surviving spouse.

*Tyre* v. *Aetna Life Ins. Co.,* 54 Cal.2d 399 [6 Cal.Rptr. 13, 353 P.2d 725], is cited in support of this proposition. In *Tyre* the insured husband elected to convert the method of payment under a life insurance policy from a lump sum to an annuity. The court there held the election to be an attempted testamentary disposition of one-half of the community assets which the wife could void after death. *Tyre* is distinguishable in that the attempted election was made during the marriage and concerned community property. Here the final decree had been entered some months prior to Patterson's election. Plaintiff Costello was not a "surviving spouse." The community property had been divided by the settlement and no longer had any community character.

Additionally, *Tyre* involved insurance which takes effect upon death whereas in the instant case the wife had a right to a share in pension payments during the lifetime of Patterson. In brief, her claim could have been satisfied during Patterson's lifetime.

Plaintiff attempts to rely on *Lopes* v. *Bruns,* 92 Cal.App. 691 [268 P. 928], as authority for voiding the election by Patterson. *Lopes* involved real property which had been divided by an interlocutory decree of divorce giving the wife an undivided two-thirds and the husband an undivided one-third interest therein. When the husband subsequently attempted to deed the property to a third party, the wife asserted her interest in the property. In a quiet title action the court held that the deed of the husband was ineffectual to convey any title to the interest in the property which had been awarded to the wife.

*Lopes* is clearly distinguishable from the instant case in that here Patterson did not attempt to convey away any property granted to plaintiff by the court. The election to claim a higher pension rate left her claim to the property intact. Death alone destroyed its value.

Plaintiff's remaining contentions deal with the subject of notice to defendant of the terms of the interlocutory decree. Since neither Patterson

nor defendant did anything in contravention of that decree, defendant's knowledge of its terms is unimportant.

The judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.