[Civ. No. 46394. Second Dist., Div. Four. Mar. 30, 1976.]

In re the Marriage of CARLOTTA and MATTHEW HENDLE.
CARLOTTA HENDLE, Respondent, v.
MATTHEW HENDLE, Appellant.

**COUNSEL**

Richard N. Piantadosi for Appellant.

No appearance for Respondent.

**OPINION**

**KINGSLEY, Acting P. J.**—The husband appeals from an interlocutory judgment of dissolution.[1] Although the notice of appeal purports to

---

[1]The notice of appeal also purports to appeal from an order denying a motion for a new trial. That is not an appealable order. (Code Civ. Proc., § 904.1)

appeal from the entire judgment, only the portion thereof involving disposition of community property is argued in the brief on appeal. We treat the case as involving only the portion of the judgment so attacked.

The parties were married for a little over two years. The record indicates that it had not been a happy association, involving periods of separation. The trial was devoted primarily to the issue of community property. The evidence, to say the best for it, was confusing, partly because some of the property involved was located in Mexico and the documents concerning that property were in Spanish which no one could translate with any accuracy. What the record does disclose is that, at most, the community property consisted of the following items:

(1) A parcel of land, in Mexico, identified as No. 6735, on which a house in bad repair was located;

(2) Another parcel of land, in Mexico, identified as No. 6739, on which several rental units were located;

(3) A house in Los Angeles County; and,

(4) The furniture in the Los Angeles house.

Although the parties were not very clear as to the values involved, the record supports the trial court's statement, made at the close of the trial, that the community liabilities exceeded the value of the community property. The decree herein attacked gave to the wife parcel No. 6735 in Mexico and one-half of the household furnishings; it gave to the husband parcel No. 6739 in Mexico, the house in Los Angeles and one-half of the household furniture. The husband was ordered to pay all community obligations and the cost of transporting the wife's share of the furniture to her new abode. No spousal support was ordered but the judgment granted custody of three children[2] to the wife, with provision for support payments by, and visitation rights in, the husband. As we have said, no objection is here made to the child custody or support provisions, nor to the dissolution of the marriage.

The record shows that, after a conference in chambers, the trial court announced its determination concerning child custody and support. The court then announced its further decision as follows:

[2]There was some evidence as to the obligation of the husband for support of another child of the mother. The effect of the judgment was to relieve the husband from any duty toward that child. The wife has not attacked the judgment in that particular, or at all.

"The Court makes no order for spousal support in view of the fact that the assets of the parties are less than the obligations and the nature of the assets make it impossible for the Court to make any division other than the Court is about to order.

"The parties have agreed that their property shall be divided and distributed to them as follows:" followed by the division hereinabove set forth. Admittedly, the husband was then in court; admittedly the court's order was clearly and slowly announced; admittedly the husband voiced no objection to the order.

On his present appeal the husband contends:

(1) That the trial court erred in dividing the community property without making and entering express findings regarding the values of the assets and liabilities involved;

(2) That the division made by the court was not one that divided the assets equally; and,

(3) That the stipulation relied on by the court is not binding on the husband because he did not expressly agree to it in open court.

I

It is clear from the record that, even accepting the husband's valuations of assets and liabilities, the division made resulted in giving to him at least half of the net community property.

II

Section 4800 of the Civil Code does not require either findings of value or an equal division if the judgment is based on a stipulation made in open court.[3]

---

[3]In his brief, the husband argues that the court's division was based on the fact that, as stated in the portion of its remarks above quoted, "the assets of the parties are less than the obligations and the nature of the assets make it impossible for the court to make any division other than the Court is about to order." That is a misreading of the language. The quoted language does no more than to explain why the court was not giving spousal support (a ruling which the wife has not here attacked) and why it was approving the stipulated division of the community property. The division was based on the stipulation and on the stipulation only.

## III

■ While an attorney may not bind his client to a stipulation regarding the division of community property without the client's knowledge and assent, a litigant cannot sit idly by, in open court, while a stipulation is read and approved by the court, and later deny the authority of his trial counsel to enter into the stipulation thus announced. While it may be better practice for the trial court to inquire into the litigant's assent to the stipulation, we know of no rule that makes such an omission fatal where, as here, the litigant, by his silence, gave every appearance of assent.

The judgment is affirmed.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The major issue involved on this appeal is whether the parties had entered into a valid oral stipulation with respect to the division of their community property; there was no written agreement. The question at issue, therefore, is whether Civil Code section 4800, subdivision (a), was satisfied in terms of the parties' having entered into an "oral stipulation of the parties in open court." The majority finds that the proceedings below resulted in a valid *"open-court"* stipulation within the meaning of Civil Code section 4800, subdivision (a).

The basis of the majority's opinion is that appellant husband became bound by the court's division of the community property because, as a litigant, he sat idly by in open court while a stipulation was read and approved by the court. The majority opinion takes the view that the husband's subsequent denial of the authority of his trial counsel to enter into the alleged stipulation came too late.

The definition of a stipulation is well established in the law. "A stipulation is an agreement between counsel respecting business before the court [citation], and like any other agreement or contract, *it is essential that the parties or their counsel agree to its terms.*" (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 142 [199 P.2d 952].) (Italics supplied.) It is equally clear that an attorney has authority to bind his

client in any of the steps of an action or proceeding by entering into a valid stipulation. (See Code Civ. Proc., § 283.) " 'Such a stipulation . . . when made in open court . . . constitutes not only an agreement between the parties, but also one between them and the court, which the court is bound to enforce for the benefit of those interested and for the protection of its own honor and dignity.' [Citation.]" (*Barendregt* v. *Downing* (1959) 175 Cal.App.2d 733, 736 [346 P.2d 870].)

The record of the proceedings in the trial court upon which the majority relies, in holding that there was a valid "oral stipulation of the parties in open court." is as follows:

"MR. LEVY: I have nothing further.

"THE COURT: I am going to ask the witness a question and I am going to ask her for the interpretation of the meaning of the following: Under the column which is spelled F-E-C-H-A, what does fecha mean?

"THE WITNESS: Date.

"THE COURT: Now, I am telling you to look at something written in Mexico and then tell me what date that would be in the United States. I am showing this to the witness. 10-24-72; what date is that?

"THE WITNESS: Your Honor, I believe this is the date and when you draw money in or draw money out—

"THE COURT: Just answer my question.

"THE WITNESS: I don't know.

"THE COURT: Do you remember ever withdrawing 25,000 pesos from the bank?

"THE WITNESS: The date?

"THE COURT: Do you remember whether you ever withdrew 25,000 pesos from the bank?

"THE WITNESS: I don't remember when I did draw that money.

"(Conference in chambers.)

"(The following proceedings were had in open court):

"THE COURT: The Court renders its following intended decision herein as follows:

"An interlocutory judgment of dissolution of marriage is granted.

"The custody of the minor children, Norma, born December 17, 1966, Matthew, July 3, 1972 and Edward, April 20, 1974, is awarded to the Petitioner with rights of reasonable visitation reserved to the Respondent;

"That the Petitioner shall keep the Respondent advised as to the residence address and telephone number of the place where the children are at all times.

"The Court finds that the Petitioner and minor children are receiving public assistance through the Los Angeles County Bureau of Public Social Services under Case No. 1930-1413255-1-79 through the office located on Grand Avenue;

"That the Petitioner and minor children reside at 212 East 30th Street, Los Angeles, California, 90011, and that the Petitioner receives public assistance under the name of Carlotta Parga, P-A-R-G-A—on your notice to the Court Trustee will you please make it very clear that the welfare is being dispensed under the name of Parga, P-A-R-G-A and not Hendle.

"That the Respondent shall pay for the support of the said three minor children the sum of $17.50 per week per child, total, $52.50 per week, payable at the rate of $105 every other Friday, commencing on Friday, May 3, 1974. Said payments to be made through the office of the Court Trustee as aforesaid in the amount of $105 plus two percent service charge, $2.10, making a total of $107.10;

"That the said payments shall continue for each child until said child attains his majority, marries, becomes self-supporting, emancipated or further Order of Court;

"That, in addition thereto, the Respondent shall maintain medical hospital insurance for the benefit of the minor children and shall name

and maintain the said minor children as a sole, primary, irrevocable beneficiary under his existing life insurance;

"That the Respondent shall pay the expenses incurred regarding the birth of Edward through the Los Angeles County General Hospital or the agency or person or persons furnishing the same.

"The Court makes no order for spousal support in view of the fact that the assets of the parties are less than the obligations and the nature of the assets make it impossible for the Court to make any division other than the Court is about to order.

"The parties have agreed that their property shall be divided and distributed to them as follows:

"To the Petitioner: Her separate interest plus community interest in the real property located in Juarez, Mexico and which has been designated throughout the trial as Parcel No. 6735 and the decree shall set forth the proper and complete legal description.

"And one-half of the furniture in kind which is now located in the family residence in Ridgecrest is awarded to the Respondent as his sole and separate property, the entire community interest in the real property located at Ridgecrest, California and all of the interest in the real property located in Juarez, Mexico, commonly designated in the trial as Parcel No. 6739 and one-half of the furniture in kind;

"That the Respondent shall pay one-half of the costs of transporting furniture which the Petitioner desires and selects but Petitioner shall first consult with Petitioner [sic] with regards to the transport costs;

"That the Respondent shall discharge the existing community obligations;

"That both parties are ordered to forthwith execute necessary documents to convey the interest in the real property as herein set forth and to do everything else necessary to carry into effect the terms and provisions;

"That each party shall bear his own additional fees and costs and Petitioner's counsel shall prepare an interlocutory judgment, submit the same to Respondent's counsel for his approval as to form and content and file the same with the Court on or before May 24, 1974.

"A copy of the minute order shall be mailed to each counsel.

"That pursuant to agreement of the parties, the Court returns Respondent's Exhibits A, B, C, D, E and F for Identification to Respondent's Counsel.

"Do we have any exhibits from the Petitioner?

"MR. DRESSELHAUS: No, your Honor.

"THE COURT: I am going to give the 6735 to the Petitioner and 6739 to the Respondent and you will need—do you have a photocopy of what is in there?

"MR. DRESSELHAUS: Yes.

"THE COURT: Can you get the description of what he needs—the Record will indicate that the Court is returning the Medi-Cal identification card to the Petitioner."

The record of the trial court proceedings demonstrates fairly convincingly that there was an absence of any oral stipulation of the parties entered into *"in open court"* as required by Civil Code section 4800, subdivision (a). "Unless it is clear from the record that both parties assented, there is no stipulation." (*Palmer* v. *City of Long Beach, supra,* 33 Cal.2d 134, at p. 143.) Although there are no magic words which counsel or the court must use to effectuate a stipulation in open court, nor is any particular formality required, the language and conduct must be such as to indicate an assent to the terms of the alleged stipulation. Thus, a colloquy of counsel in open court may be sufficient to constitute an assent to a stipulation. (See *Wangenheim* v. *Garner* (1919) 42 Cal.App. 332 [183 P. 670] but cf. *Back* v. *Farnsworth* (1938) 25 Cal.App.2d 212 [77 P.2d 295].)

The proceedings below in the instant case are to be compared with those of *In re Marriage of Carter* (1971) 19 Cal.App.3d 479 [97 Cal.Rptr. 274], in which counsel for one of the parties stated the stipulation in open court. The stipulation was assented to by counsel for the opposing party and then the trial judge, with painstaking care, made inquiries of the parties as to whether they understood, and agreed to, the stipulation which was being made and recited by counsel.

In the case at bench, however, it is to be noted that the testimony of a witness was interrupted and, apparently, the court and counsel then conferred in chambers. When proceedings were again held in open court, the trial judge simply rendered and pronounced a notice of intended decision which covered all of the elements involved in the controversy between the parties. Sandwiched in the middle, and set forth as a part of the court's rendition of its intended decision, is the trial judge's statement of an alleged oral agreement between the parties as to the division of their community property. It is this statement of the trial judge which the majority opinion considers a valid, oral stipulation of the parties, entered into in open court.

We can only *surmise* and *speculate* that the attorneys of the two parties advised the trial judge in chambers that they so stipulated for their respective clients. At no point in the trial judge's oral announcement of his intended decision in open court did he inquire of counsel for either party, or inquire of either party, as to whether such counsel or party considered the court's statement to constitute an accurate portrayal of an oral agreement or stipulation to which the parties were assenting.

To hold that appellant husband should have been listening to the trial judge's rendition of his intended decision with the ear of a trial attorney and should have known when the trial judge reached that portion of his intended decision which constituted a stipulation of the parties, and should then have made an objection, or should have made an objection after the trial judge had completed the rendition of his intended decision, constitutes a failure to recognize the actualities of a contested trial.

The majority's holding that the record in the instant case establishes "an oral stipulation of the parties in open court," as required by Civil Code section 4800, subdivision (a), puts a stamp of approval upon a trial court procedure which makes a mockery of the *Palmer* court's statement that, "[u]nless it is clear from the record that both parties assented, there is no stipulation." (*Palmer, supra,* 33 Cal.2d 134, at p. 143.)

It is my view that in order for a stipulation to meet the test of an "oral stipulation of the parties in open court," the trial judge, if he states for the record in open court a stipulation which he believes was made in a chambers conference, is under a clear-cut obligation to ask counsel and

the parties present in open court whether the court's statement of the stipulation represents the agreement of the parties. I see no justification for approving the procedure of the trial judge in the instant case rather than requiring the procedure carried out in *In re Marriage of Carter.*

Consequently, I would reverse the judgment.