[Civ. No. 54977. Second Dist., Div. Four. Sept. 20, 1979.]

In re the Marriage of BETTY LOU and ROBERT W. LIONBERGER.
BETTY LOU LIONBERGER, Appellant, v.
ROBERT W. LIONBERGER, Respondent;
OPERATING ENGINEERS PENSION TRUST, Appellant.

58

COUNSEL

Marvin Licker for Appellant Wife.

Wayne Jett and Robert Scot Clifford for Appellant Pension Trust.

Martin Goldberg for Respondent.

OPINION

**ALARCON, J.**—Appellant, Betty Lou Lionberger, has appealed from that portion of an interlocutory judgment of dissolution of marriage which provides that spousal support payable to her by respondent Robert W. Lionberger shall terminate on July 15, 1980.

Cross-appellant, Operating Engineers Pension Trust, appeals from that portion of the interlocutory judgment of dissolution of marriage which declares that the interest of husband in the pension plan of the Operating Engineers Pension Trust is community property and which awards a portion thereof to wife.

*Summary of the Facts*

Husband and wife were married on December 24, 1953, and separated on September 26, 1973. A petition for dissolution of the marriage was filed by wife, listing as a community asset, inter alia, husband's pension or retirement fund through his employment.

During the pendency of the dissolution proceedings, petitioner joined as a third-party defendant the Operating Engineers Pension Trust, administrator of the pension and retirement plan protecting Operating Engineers Local 12, of which husband was a member.

On April 13, 1978, the court entered interlocutory judgment of dissolution in the action. The award of spousal support and the division of all community property was made pursuant to stipulation of the parties, with the exception of the disposition of husband's retirement and pension benefits.

*Determination of Spousal Support*

On July 30, 1976, counsel and the court conferred in chambers concerning a proposed settlement of the marital dissolution action. Thereafter, in open court, in the presence of counsel and the parties, counsel for respondent read into the record the terms of the stipulation just entered into. With respect to the spousal support the record reflects the following:

"Then the respondent is to pay to the petitioner, as and for spousal support, the sum of $175 per month, payable one-half on the 1st and one-half on the 15th of each month, commencing August 1, 1976, and continuing monthly thereafter for a period of four years.

"THE COURT: Well, that would be to and including the payment on July 15, 1980.

"MR. DAY: Correct, Your Honor.

"THE COURT: And the Court will not reserve jurisdiction beyond that latter date."

No objection was voiced by counsel for appellant with respect to any of the foregoing terms. The interlocutory judgment ultimately entered in this matter contained an identical provision with respect to spousal support, providing that such support was to continue "to and including July 15, 1980, for a period of four years, at which time all spousal support shall forever terminate."

Appellant moved to set aside that portion of the interlocutory judgment which provided for termination of spousal support, on the basis of mistake, inadvertence, surprise, or excusable neglect. That motion was denied by the trial court.

On appeal, appellant states that during the conference in chambers prior to the hearing on July 30, 1976, counsel for appellant stated to the court: "I believe that petitioner will go along with the $175.00 per month for four (4) years but will not agree to any termination of spousal support."

Appellant argues that the provision for termination of spousal support was not pursuant to stipulation of the parties and that the interlocutory

judgment is in error in so reflecting. However, the record on appeal contains no transcript of the in-chambers conference to which appellant refers. It is thus impossible for this reviewing court to evaluate appellant's claim. The remedy available to appellant in the absence of such a record was a motion before the same court to set aside the judgment. That motion was heard and the court, cognizant of the facts, denied it.

Further, the record we do have, of the proceedings in open court, reflects that counsel for appellant made no objection to the court's statement that it would not reserve jurisdiction beyond the four-year period.

On August 19, 1976, the parties and their counsel returned to court for resolution of remaining issues in the dissolution action. The amount and termination date of support payments was again discussed by court and counsel. No objection to the four-year termination was raised by or on behalf of appellant.

Whether or not appellant stipulated to the termination of support at the end of four years, her failure to object to the court's inclusion of that provision in the decree amounts to an implied waiver of her right to raise that contention on appeal. (*Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311, 319 [74 Cal.Rptr. 534, 449 P.2d 750].)

In *In re Marriage of Hendle* (1976) 56 Cal.App.3d 814 [128 Cal.Rptr. 854], following a conference in chambers, the court announced its rulings with respect to division of community property. Husband challenged the order on appeal. The appeals court first observed, at page 817: "Admittedly, the husband was then in court; admittedly the court's order was clearly and slowly announced; admittedly the husband voiced no objection to the order." The court held at page 818: "While an attorney may not bind his client to a stipulation regarding the division of community property without the client's knowledge and assent, a litigant cannot sit idly by, in open court, while a stipulation is read and approved by the court, and later deny the authority of his trial counsel to enter into the stipulation thus announced. While it may be better practice for the trial court to inquire into the litigant's assent to the stipulation, we know of no rule that makes such an omission fatal where, as here, the litigant, by his silence, gave every appearance of assent."

In the instant case, both appellant and her attorney remained silent while the court recited the provision respecting termination of spousal

support. The silence of counsel under the circumstances, on two occasions in open court, is tantamount to assent to the provision (*McBain* v. *Santa Clara Sav. & Loan Assn.* (1966) 241 Cal.App.2d 829, 838 [51 Cal.Rptr. 78]), and that assent is binding on appellant (*Cameron* v. *Cameron* (1948) 88 Cal.App.2d 585, 595 [199 P.2d 443]), particularly where, as here, appellant was present in court when the ruling was made.

Appellant having impliedly consented to the provision complained of, she has waived her right to cite the ruling as error on appeal.

*Cross-appeal of Operating
Engineers Pension Trust*

Cross-appellant (hereinafter the trust) raises the following contentions on appeal:

1. This court has no jurisdiction over the within matter because federal courts have exclusive jurisdiction concerning application of the provisions of ERISA.

2. ERISA preempts state law, thereby precluding the application of California community property law to the distribution of benefits from the trust.

3. The order commanding the trust to pay benefits directly to the wife is contrary to the provisions of ERISA.

4. The order commanding the trust to pay benefits directly to the wife harms the participants and beneficiaries of the trust and is unnecessary to protect the interest of the wife.

5. The order precluding the trust from honoring any election by the husband to receive a joint and survivor annuity is contrary to the provisions of ERISA.

6. The order declaring that the wife's interest in benefits payable from the trust is alienable and inheritable is contrary to law.

*State Court Jurisdiction*

The trust contends that under the provisions of the Employee Retirement Income Security program (hereinafter ERISA) found at

United States Code Annotated title 29, section 1001 et seq., the federal court has exclusive jurisdiction to clarify, interpret, and apply ERISA to California retirement programs.

Section 502(e)(1) of ERISA (29 U.S.C. § 1132(e)(1)) states: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

The exception to exclusive federal jurisdiction reads as follows: "(a) A civil action may be brought— [¶] (1) by a participant or beneficiary— [¶] . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . ." (29 U.S.C. § 1132(a)(1)(B).)

The trust argues that this is not an action brought to clarify rights under the terms of the plan. We disagree. In recent years, numerous federal district courts have considered the jurisdiction issue posed in the instant case and have concluded that federal courts do not have exclusive jurisdiction. In *Stone* v. *Stone* (N.D.Cal. 1978) 450 F.Supp. 919, a divorced wife brought an action against her former husband and the administrator of his pension plan, alleging noncompliance with the divorce court's order that a percentage of the monthly pension payments be made to her. The pension plan removed the action to the federal district court. The *Stone* court concluded that although intervention in a state divorce proceeding by federal courts was improper, because of the nature of the action brought by Mrs. Stone against the pension plan, the federal court had *concurrent* jurisdiction and could proceed to reach the merits. The court found that the wife's action was brought under section 1132(a)(1)(B). She sued as a transferee of the participant's right to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . ." (29 U.S.C. § 1132(a)(1)(B).)

In *Carpenters Pension Trust, etc.* v. *Kronschnabel* (C.D.Cal. 1978) 460 F.Supp. 978, an action was brought by a pension trust to nullify state court orders which included pension benefits as community property, on the ground that ERISA preempts all state law with respect to pensions.

The court found that the state court had exercised its proper jurisdiction in awarding pension benefits to the nonemployee spouse, stating at page 983: "For this court to prevent the California courts from effectuating the state's community property laws in the absence of a clear message from Congress would be to undermine the principles of federal-state comity from which the preemption doctrine draws its authority in the first instance."

In *In re Marriage of Pardee* (C.D.Cal. 1976) 408 F.Supp. 666, the pension trust attempted to remove a dissolution action from state to federal court, contending that ERISA mandated federal jurisdiction. The court concluded that "the Congressional scheme does not permit removal, . . ." (*Id.,* at p. 668.)

■ The State of California has exclusive jurisdiction over domestic relations actions brought by California residents to determine their rights in California property. *(In re Burrus* (1890) 136 U.S. 586, 593 [34 L.Ed. 500, 503, 10 S.Ct. 850].) In addition, the state has concurrent jurisdiction with the federal courts to the extent that one of the assets of the domestic relations action is a pension or retirement plan governed by ERISA. (*Stone* v. *Stone, supra,* 450 F.Supp. at pp. 921-923; 29 U.S.C. § 1132(e)(1).)

### Preemption by ERISA

Issues 2, 3, and 4 concerning federal preemption of California community property law are identical to the issues raised and resolved in this court's recent opinion in *In re Marriage of Johnston* (1978) 85 Cal.App.3d 900 [149 Cal.Rptr. 798]. Appellant acknowledges that in that opinion this court concluded that the division of pension benefits and their distribution by the trust directly to the nonemployee spouse were not in violation of ERISA and that ERISA does not preempt California's community property law. However, the trust contends that those holdings are in error and requests that they be reexamined.[1] Having done so, we are convinced that ERISA contains no evidence of congressional intent to preempt state marital property laws.

---

[1]The argument of the trust that ERISA preempts all California law with respect to pension benefits is not aided by its argument with respect to jurisdiction. On page 6 of appellant's opening brief, in support of its contention that this action is not one allowing concurrent federal and state jurisdiction under the act, the trust argues: "Wife's claim that she is entitled to receive a portion of the pension benefits payable to Husband from the Operating Engineers Pension Trust is a claim based upon rights arising under California community property law, not 'under the terms of the plan.' "

In its reply brief, the trust cites a recent Supreme Court decision, *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802]. The trust argues that this decision "furnishes additional persuasive support for the proposition that ERISA preempts California community property law and precludes the order directing the trust to pay benefits directly to the wife."

In that case, the high court reversed the California Supreme Court and held that benefits payable to an employee from the Federal Railroad Retirement Act may not be divided under a state's community property law. The Supreme Court's decision in *Hisquierdo* was based on a number of special provisions in the Railroad Retirement Act which compelled the conclusion that Congress intended that the benefits flow only to the employee and his wife, while they are married. The court explained: "It [the act] also makes detailed provision for a worker's spouse; the spouse qualifies for an individual benefit if the spouse lives with the employee, and receives regular contributions from the employee for support, or is entitled to support from the employee pursuant to a court order. (Section 231a(c)(3)(i). The benefits terminate, however, when the spouse and the employee are absolutely divorced. Section 231d (c)(3)." (*Id.,* at p. 575 [59 L.Ed.2d at p. 7].)

The court observed that "Congress carefully targeted the benefits created by the Railroad Retirement Act. It even embodied a community concept to an extent. The Act provides a benefit for a spouse, . . . Congress purposefully abandoned that theory, however, in allocating benefits upon absolute divorce. In direct language the spouse is cut off: . . . The choice was deliberate. When the Act was revised in 1974, a proposal was made to award a divorced spouse a benefit like that available to a divorced spouse under the Social Security Act. The labor-management negotiation committee, however, rejected that proposal, and Congress ratified its decision." (*Hisquierdo* v. *Hisquierdo, supra,* 439 U.S. at pp. 584-585 [59 L.Ed.2d at pp. 12-13].)

The court also pointed out that, unlike most pension plans, Railroad Retirement Act benefits have strong federal overtones in that "[c]ompulsory federal taxes finance them and not just the taxes that fall on the employee." (*Id.,* at p. 582 [59 L.Ed.2d at p. 11].) The court concluded that Congress had expressly enacted legislation to protect the retired worker alone and that it thus remains within the province of Congress to extend that provision to the worker's divorced spouse. Therefore, the California Supreme Court was in error in dividing the Railroad Retirement Act benefit between the parties.

The *Hisquierdo* decision is clearly distinguishable from the facts of the instant case. The dissolution action here involves a pension and retirement plan whose only relationship with the federal government is that it, along with all other qualifying plans, is regulated by ERISA. ERISA contains no express provisions limiting or even discussing the rights of divorced spouses with respect to governed plans. "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be pre-empted. (*Wetmore* v. *Markoe,* 196 U.S. 68, 77 [49 L.Ed. 390, 25 S.Ct. 172] (1904). A mere conflict in words is not sufficient. State family and family-property law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden. *United States* v. *Yazell,* 382 U.S. 341, 352 [15 L.Ed.2d 404, 86 S.Ct. 500] (1966)" (*Hisquierdo* v. *Hisquierdo, supra,* 439 U.S. at p. 581 [59 L.Ed.2d at p. 11].)

■ Our conclusion in *In re Marriage of Johnston, supra,* 85 Cal.App.3d at page 912, is repeated here: "We conclude that the preemption clause of ERISA does not affect the operation of California community property laws; that ERISA does not interfere with the power of California courts to divide pension benefits between a husband and wife and to order direct payments of those benefits to a nonemployee spouse; that California community property law does not relate to and is thus not included in federal regulation of any pension benefit plan."

### The Order Precluding Husband's Election of a Joint and Survivor Annuity

In the interlocutory judgment of dissolution of marriage, entered April 13, 1978, the court found that husband had accumulated approximately 17 "credits" in the Operating Engineers Pension Trust, all of which credits were the community property of husband and wife. The court ordered: ". . . each party is hereby awarded as his or her separate property a share which equals one-half of the ratio of 17.0531 credits to the total number of credits respondent has at the time of his retirement. . . ."

The trustee was ordered to pay to the wife, as received by the husband, an amount each month which is the equivalent of the above award.

The trust now contends that the following provision in the decree constitutes an improper intrusion into the administration of the trust and is violative of California law: "The Trustees of Third Party Defendant are further directed not to honor or comply with any elections or direction by respondent (such as election to himself and his surviving spouse) which might lessen or diminish petitioner's share of monthly payment or prolong the term of payment to petitioner. Respondent is directed and ordered to execute any election or designation which may be required for him and his surviving spouse not to receive a joint annuity, and the Trustees of Third Party Defendant are directed to pay benefits to respondent only in a form other than a joint annuity."

The pension plan in question provides at article IV, section 4, that in lieu of the form of pension provided in the plan, ". . . a Participant may elect to receive an actuarially reduced monthly pension for life, based on his age and sex and the age and sex of a Contingent Annuitant, commencing on the same date as the monthly pension otherwise payable to him with provision for the continuance of such reduced monthly pension after his death to a Contingent Annuitant." The plan also provides that such survivor annuity is payable only if "the Contingent Annuitant is the spouse of the Participant."

It is settled law in California that if a pension plan provides for payment to a spouse after the death of a participant, either by way of a lump sum death benefit or continuing monthly payments, the beneficiary must have been married to the participant at the time of his death. (*Waite v. Waite* (1972) 6 Cal.3d 461, 472 [99 Cal.Rptr. 325, 492 P.2d 13].) Therefore, the effect of an election by the employee spouse to convert his pension benefits to those available under the joint and survivor annuity provisions of the plan, would be to reduce the monthly income payable during the participant's life and increase the benefits payable after his death. Because the divorced wife's right to share in pension benefits terminates with the death of the husband, the monetary value of her interest in the pension benefits would be reduced by such an election. It was obviously this result which the trial court attempted to avert by its order prohibiting the husband from selecting the joint and survivor annuity provisions.

The trust contends that the court erred in making such a ruling, citing the following language from *In re Marriage of Brown* (1976) 15 Cal.3d 838, at pages 849-850 [126 Cal.Rptr. 633, 544 P.2d 561]: "As to the claim that our present holding will infringe upon the employee's freedom of

contract, we note that judicial recognition of the nonemployee spouse's interest in vested pension rights has not limited the employee's freedom to change or terminate his employment, to agree to a modification of the terms of his employment (including retirement benefits), or to elect between alternative retirement programs. We do not conceive that judicial recognition of spousal rights in nonvested pensions will change the law in this respect. The employee retains the right to decide, and by his decision define, the nature of the retirement benefits owned by the community."

The issue presented is whether the Supreme Court intended, by the foregoing language, to empower the participant spouse to reduce the community interest of the nonparticipant spouse by his election of benefits after dissolution of the marriage. As we will explain, we do not believe that the Supreme Court intended such a result.

We note at the outset that the *Brown* court itself, as part of the same discussion quoted by the trust, limited the right of the employee spouse to select among planned benefits. "In *Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128, 131 [287 P.2d 765], and *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438, 447 . . . we held that a public employee's property interest in his pension rights does not prevent the public entity from modifying those rights so long as the modification is reasonable and does not result in net disadvantage to the employee. By the same reasoning recognition of the spouse's property interest should not bar a reasonable, *nondetrimental* modification of the pension system." (*In re Marriage of Brown, supra,* 15 Cal.3d at page 849, fn. 11.) (Italics added.)

The change contemplated here would be detrimental to the wife. The court has awarded to her a portion of the interest in the pension plan as her community property. Her interest in that property is vested, although not yet matured.

The alteration of benefits from the right to monthly payments during his life to the rights granted under the Joint and Survivor Annuity Program would, to the extent that the wife's interest is reduced, transfer her interest from the parties' community property to the husband's separate property. Such a transfer is not permitted under California law. Any uncertainty raised by the quoted statement in the *Brown* opinion is clarified by holding of the Supreme Court in *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96]. In that case, husband, a serviceman eligible for full retirement, elected to receive disability

payments rather than retirement benefits, the disability benefits being at a higher monthly rate. Husband contended that, according to California law, the disability income was his separate property. The Supreme Court stated at page 786: "We cannot permit the serviceman's election of a 'disability' pension to defeat the community interest in his right to a pension based on longevity. In the first place, such a result would violate the settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse. (See *Waite* v. *Waite* (1972) 6 Cal.3d 461, 472 . . . *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 650-651. . .)[5] As the court explained in *In re Marriage of Mueller* (1977) 70 Cal.App.3d 66 . . . a case indistinguishable from the present appeal, the employee spouse retains the right to determine the nature of the benefits to be received.[6] It would be inconsistent with community property principles 'to permit that spouse to transmute what would otherwise be community property into his or her separate property.' (70 Cal.App.3d at p. 71-72.)"

Footnote 5: "While in *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851, footnote 14, we disapproved dicta in *Waite* and *Marriage of Peterson* to the effect that nonvested pension rights were not community property, we did not disapprove the holding in those cases that one spouse could not by election destroy the community interest of the other spouse."

Footnote 6: "Recognition of the nonemployee spouse's interest in the 'disability' pension would not limit the employee's freedom 'to elect between alternative retirement programs.' (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 849.) Any serviceman eligible to receive 'disability' payments higher than ordinary retirement benefits would remain free to elect the higher payments if he so chose."

The Supreme Court's statement that the serviceman remained free to choose any monthly income *higher* than that to which he would be otherwise entitled explains the limited extent to which the husband remains free to "agree to a modification of the terms of his employment (including retirement benefits), . . ." (*In re Marriage of Brown, supra,* 15 Cal.3d at p. 849.)

Therefore, the contention of the trust that the court did not have the power to preserve the wife's interest in the community by ordering the husband to maintain that interest in the form held at the time of divorce is not well taken. As the Supreme Court observed in *Brown, supra,* at page 848, footnote 10: "Our suggestion in *Phillipson* v. *Board of*

*Administration, supra,* 3 Cal.3d 32, 46 [89 Cal.Rptr. 61, 473 P.2d 765], that when feasible the trial court should award the employee all pension rights and compensate his spouse with other property of equal value, was not intended to tie the hands of the trial court. That court retains the discretion to divide the community assets in any fashion which complies with the provisions of Civil Code section 4800."

In *In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, at page 312 [127 Cal.Rptr. 792], the court summarized the power of the court in distributing community property as follows: "As a general rule, in selecting a method to effect distribution of the community interest in retirement rights the court acts in the exercise of judicial discretion and its determination respecting such will not be interfered with on appeal unless an abuse of discretion is shown. The criterion governing judicial action is reasonableness under the circumstances. The method adopted may vary with the facts in each case."

In *Ball* v. *McDonnell Douglas Corp.* (1973) 30 Cal.App.3d 624 [106 Cal.Rptr. 662], the husband made a choice opposite to the one contemplated here. After a divorce decree which awarded a one-half interest in pension funds to the wife, husband employee elected to take higher monthly payments and forfeit death benefits. He died shortly thereafter and the wife sued contending he had no right to make such an election. In rejecting her contention, the court observed at pages 630-631: "Plaintiff . . . could have requested that the court direct that no election be made by the husband which could, however indirectly, result in extinguishment of eligibility to draw from the plan. This she failed to do.

". . . . . . . . . . . . . . . . . .

"Under the provisions of the pension plan Patterson had the right to determine when, in the future, and in what amounts the benefits available to him would best serve his economic situation. It is clear that the divorce decree *did not* give plaintiff Costello a right to control Patterson's ability to plan his future. She would have had no such control during the marriage and *in the absence of a specific provision in the decree* she gained no such right by virtue of the divorce." (Italics added.)

We see no infirmity in the court's order in this case. Further, contrary to the contention of the trust, the order does not appear to violate the provisions of ERISA.

"The regulations promulgated pursuant to ERISA have interpreted the power of election with respect to joint and survivor annuity benefits as not being an unfettered right. With respect to the option at normal retirement age *not* to take the joint and survivor feature, the regulations provide: 'A plan will not fail to meet the requirements of this section merely because the plan requires the participant to obtain the written approval of his spouse in order for the participant to make this election or if the plan provides that such approval is not required.' [Treas. Reg. § 1.401 (a)-11(c)(1)(B) (1977).] In other words, ERISA is construed as not itself controlling how an election shall be made against a joint and survivor annuity. The states are invited to impose a written consent requirement such as that found in California Civil Code section 5125(b)." (Reppy, *Community and Separate Interests in Pensions and Social Security Benefits after Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 523.)

### Alienability of the Wife's Interest

■ The interlocutory decree of dissolution contains the following provision: "Petitioner's interest is alienable, inheritable and assignable in the same manner as respondent's interest in the pension or retirement plan of the Third Party Defendant."

As previously noted in this opinion, the wife's interest in the pension benefits extends only to monthly payments payable to husband during his life. Under the terms of the plan, and pursuant to numerous California decisions, wife has no right to nor interest in any sums payable after the husband's death. A similar order was analyzed and found in error by the California Supreme Court in *Waite* v. *Waite, supra,* 6 Cal.3d 461. The court held at pages 472-473:

"The superior court ordered the Controller to 'pay directly to plaintiff herein *or her devisee or heirs* one half of all benefits which may be payable under the Judge's Retirement Act by reason of the services of defendant Waite.' (Italics added.) Defendant objects to the italicized language favoring plaintiff's heirs or devisees; he correctly contends that if plaintiff dies before him, her share of the monthly pension payments should then go directly to him, and not to plaintiff's estate . . . .

"The state's concern, then, lies in provision for the subsistence of the employee and his spouse, not in the extension of benefits to such persons or organizations the spouse may select as the objects of her bounty. Once

the spouse dies, of course, her need for subsistence ends, and the state's interest in her sustenance reaches a coincident completion. When this termination occurs, the state's concern narrows to the sustenance of the retired employee; its pension payments must necessarily be directed to that sole objective." (See also, *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 654 [115 Cal.Rptr. 874]; *In re Marriage of Bruegl* (1975) 47 Cal.App.3d 201, 206 [120 Cal.Rptr. 597].)

Therefore, the court erred in finding that the petitioner's interest in the pension plan is alienable, inheritable and assignable.

The interlocutory judgment is modified to strike therefrom the following sentence found at page 7, lines 2 through 5 thereof: "Petitioner's interest is alienable, inheritable and assignable in the same manner as respondent's interest in the pension or retirement plan of the Third Party Defendant." In all other respects the judgment is affirmed. Costs on appeal are awarded to cross-respondent to be paid by cross-appellant Operating Engineers Pension Trust.

Kingsley, P. J., concurred.

**JEFFERSON (Bernard), J.**—I concur in part and dissent in part.

I agree with the majority's opinion with the exception of the majority's determination that affirms the trial court's judgment that spousal support to appellant-wife be terminated at the end of a four-year period without any reservation of jurisdiction to order further support in the future.

The majority holds that appellant-wife's right to attack the termination provisions of spousal support set forth in the interlocutory judgment is barred either (1) on the ground that appellant had stipulated below for such termination, or (2) that there was a failure by appellant to object to the trial court's inclusion of such provisions in the judgment and that such failure amounts to an implied waiver of the right to assert error on appeal.

On the question of waiver, the majority relies upon *Sabella* v. *Southern Pac. Co.* (1969) 70 Cal.2d 311 [74 Cal.Rptr. 534, 449 P.2d 750], in which it was held that, in a personal injury action, defendant had waived the right to object on appeal to plaintiff-counsel's trial misconduct by failing to object to such counsel's trial misconduct and failing to request the trial court to admonish the jury to disregard such misconduct.

But the majority's reliance upon *Sabella* is without reasonable foundation. The *Sabella* court made it quite clear that its decision rested upon the circumstances of the particular case. Thus, the *Sabella* court observed: "Each case must ultimately rest upon a court's view of the overall record, taking into account such factors, inter alia, as the nature and seriousness of the remarks and misconduct, the general atmosphere, including the judge's control, of the trial, the likelihood of prejudicing the jury, and the efficacy of objection or admonition under all the circumstances." (*Id.*, at pp. 320-321; fn. omitted.)

The issue presented in the case at bench is not at all similar to the issue presented in *Sabella.* In addition, it is to be noted that *Sabella* was decided by a divided court. In his dissenting opinion in *Sabella,* Chief Justice Traynor commented that "[n]o admonition, however, could cure the prejudicial effect of such misconduct as prevailed throughout this case. Accordingly, defendant's failure to request admonitions to the jury does not preclude it from challenging the misconduct on appeal." (*Id.*, at pp. 324-325.) It is my view that, in terms of fairness and justice, the dissenting opinion in *Sabella* presents a far better rule than that announced by the *Sabella* majority.

In the matter before us, the majority also relies upon the case of *In re Marriage of Hendle* (1976) 56 Cal.App.3d 814 [128 Cal.Rptr. 854], in which the court held that there was a failure by appellant and his counsel to voice an objection to the trial court's statement of an alleged oral stipulation of the parties and that such failure to object amounted to a *consent* to the stipulation as announced by the trial court.

The *Hendle* case involved the issue of a division of community property, while the case at bench involves the question of termination of spousal support. *Hendle* is similar to the case at bench in that there was no trial or determination of the issues by the trial court upon evidence presented, but a decision based upon an asserted oral agreement between the parties.

I dissented in *Hendle* and set forth the view that the majority result was erroneous. (See *Hendle, supra,* 56 Cal.App.3d 814, 818-824 (dis. opn. of Jefferson, J.).) The majority's view in the case at bench is equally as untenable as was the majority's view in *Hendle.* The record before us does not support the majority's conclusion that the appellant wife had entered into an oral stipulation with respondent husband for a termination of spousal support at the end of four years without any reservation of jurisdiction by the court to order further spousal support.

"The definition of a stipulation is well established in the law. 'A stipulation is an agreement between counsel respecting business before the court [citation], and like any other agreement or contract, *it is essential that the parties or their counsel agree to its terms.*' (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 142 [199 P.2d 952].) (Italics supplied.) It is equally clear that an attorney has authority to bind his client in any of the steps of an action or proceeding by entering into a valid stipulation. (See Code Civ. Proc., § 283.) ' "Such a stipulation . . . when made in open court . . . constitutes not only an agreement between the parties, but also one between them and the court, which the court is bound to enforce for the benefit of those interested and for the protection of its own honor and dignity." [Citation.]' (*Barendregt* v. *Downing* (1959) 175 Cal.App.2d 733, 736 [346 P.2d 870].)" (*Marriage of Hendle, supra,* 56 Cal.App.3d 814, 818-819 (dis. opn. of Jefferson, J.).)

It is my view that the record of the trial court proceedings below demonstrates, without equivocation, that appellant wife did *not* enter into any oral stipulation with respondent husband for the termination of spousal support without any reservation of jurisdiction in the trial court to order further spousal support at the end of the four-year period. "Although there are no magic words which counsel or the court must use to effectuate a stipulation in open court, nor is any particular formality required, the language and conduct must be such as to indicate an assent to the terms of the alleged stipulation." (*Marriage of Hendle, supra,* 56 Cal.App.3d 814, 822 (dis. opn. of Jefferson, J.).)

The record below establishes only that the stipulation for spousal support was stated in open court by counsel for respondent husband and that such counsel did *not* state, as a part of the stipulation or otherwise, that there would be no reservation of jurisdiction in the trial court to modify the spousal support provisions beyond the period of four years.

After counsel for respondent husband stated that the spousal support would last for a period of four years, the trial judge spoke up and remarked: "Well, that would be to and including the payment on July 15, 1980." Respondent-husband's counsel replied: "Correct, Your Honor." The trial judge then gratuitously added: "And the Court will not reserve jurisdiction beyond that latter date." The record reflects that respondent-husband's counsel did not comment upon this statement of the trial judge. Counsel made no statement as to whether this nonreservation-of-jurisdiction statement of the trial judge constituted a part of the stipulation of the parties, but simply proceeded to announce another

portion of the parties' agreement with respect to the payment of attorney's fees.

Since respondent-husband's counsel made no reply with respect to whether the trial judge was correct in the judge's gratuitous statement as to nonreservation of jurisdiction, I can find no logic or reason to support the majority's holding that appellant wife or her counsel was required to raise an objection that the trial judge's pronouncement was *not* part of the stipulation of the parties. I can find no duty on appellant wife or her counsel to respond to the trial judge when counsel for respondent husband, who was reciting the stipulation, made no reference to the trial judge's interjection.

The record also reflects that, on a subsequent date approximately three weeks later, respondent's counsel stated in open court: "I didn't have a commencement date on the spousal support, but it was to be for a period of four years." The court then stated: "Yes. That I have down here, too, somewhere. A hundred and—What did you say?" To this question respondent's counsel replied: "$175 per month, Your Honor." The trial court then stated: "My notes indicate August 1, 1976; terminating with the payment on July 15, 1980. [¶] Now, Mrs. Lionberger, would you come up here? There are one or two brief questions which we neglected to ask the last time. [¶] Raise your right hand and be sworn, please." Appellant was then questioned about other matters, but nothing at all about the length of spousal support or the nonreservation of jurisdiction to modify spousal support.

For the majority to hold that, upon this record, appellant had entered into an oral stipulation for a nonreservation of jurisdiction to modify the four-year provision for payment of spousal support, constitutes a decision based upon pure surmise, speculation and conjecture. It is to be noted that, at no point in the record, does it appear that the trial judge asked appellant wife or appellant-wife's counsel whether appellant was agreeing to a provision for nonreservation of jurisdiction to deal with spousal support at the conclusion of the four-year period. It is of utmost significance in the instant case that the only question about nonreservation of jurisdiction was put by the trial judge to respondent-husband's counsel—as a statement and not as a question—and that counsel for respondent husband made no response to the trial court's gratuitous statement.

The majority's holding, in reliance upon *Marriage of Hendle,* that the record in the instant case establishes that appellant had entered into an oral stipulation with respondent in open court for the nonreservation of jurisdiction to modify spousal support "puts a stamp of approval upon a trial court procedure which makes a mockery of the *Palmer* court's statement that '[u]nless it is clear from the record that both parties assented, there is no stipulation.' " (*Marriage of Hendle, supra,* 56 Cal.App.3d 814, 823 (dis. opn. of Jefferson, J.).)

I consider the law to be that, if a trial judge states for the record in open court a stipulation which he believes was made by the counsel for the parties in a chambers conference, he has a mandatory obligation to ask all counsel and the parties present in open court whether the court's statement of the stipulation represents the agreement of the parties. Nothing short of this procedure should be tolerated. If a trial judge fails to follow this procedure, a party should not be held to have entered into an oral stipulation through any process of implied consent or waiver.

I would thus reverse that portion of the interlocutory judgment which provided for the payment of spousal support for a period of four years "at which time all spousal support shall forever terminate," and order a modification of the judgment to provide for a reservation of jurisdiction in the trial court to order payment of spousal support following the expiration of the four-year period.

The petitions of both appellants for a hearing by the Supreme Court were denied November 15, 1979.