[Civ. No. 14068. Fourth Dist., Div. One. Apr. 14, 1975.]

In re the Marriage of HERBERT J. and EVELYN M. BRUEGL.
EVELYN M. BRUEGL, Appellant, v.
HERBERT J. BRUEGL, Respondent.

202

COUNSEL

Thurman & Barrett and Ernest V. Barrett for Appellant.

Joan M. Broadhurst for Respondent.

OPINION

**BROWN (Gerald), P. J.**—Evelyn M. Bruegl appeals from that portion of an interlocutory judgment of dissolution of marriage which characterizes the pension rights of Herbert J. Bruegl as his separate property.

Evelyn and Herbert Bruegl were married on June 25, 1945. A carpenter by profession, Herbert belongs to a union with a noncontributory pension fund. He started earning credits in this plan on January 1, 1959,[1] and stipulated at trial he then had 14 years, 3 months of pension credit. The couple separated on February 13, 1973; an interlocutory judgment of dissolution was entered December 5, 1973, when Herbert was 51 years old.

The trial court found Herbert was not eligible to retire and if he stopped working he could not withdraw any funds from the pension fund; it concluded there was no community property interest in the fund. In so ruling the trial court was concerned with the proper interpretation of one instrument, the pension plan.

■ "[W]here no extrinsic evidence has been introduced in connection with the instrument, the court on appeal can and should apply its own interpretation . . ." (*Estate of Shannon,* 231 Cal.App.2d 886, 889 [42 Cal.Rptr. 278].)

■ Pension benefits, to the extent they have vested, are community property subject to equal division between the spouses in the event the marriage is dissolved (*Williamson* v. *Williamson,* 203 Cal.App.2d 8, 11 [21 Cal.Rptr. 164]). ■ Have Herbert's rights in this plan vested? Under the plan's terms vesting occurs when "[a]n Employee . . . has earned at least 25 years of Pension Credit . . . or . . . has attained age 45 and has accumulated at least 10 years of Pension Credit. . . ." (Art. IV, § 8(a).)

Herbert is over 45 years of age and has accumulated more than 10 years of pension credit. There is no way for his pension rights to be reduced or withdrawn. Herbert has an irrevocable interest in the fund; his rights have vested (*In re Marriage of Peterson,* 41 Cal.App.3d 642, 649 [115 Cal.Rptr. 184]).

Repeating the findings of the trial court, Herbert argues he is not eligible for retirement, he cannot receive any benefits until age 55 at the earliest[2] and his interest is a mere expectancy, citing *Williamson* v.

---

[1] Herbert also acquired a potential credit of four years and five months from August 1954 through December 1958 in the union's old pension plan. This plan is not in issue here.

[2] The union's pension plan offers three retirement alternatives: the normal pension plan, the reduced pension plan and the early retirement pension plan. The plan under which Herbert can receive benefits at the earliest date has the following requirements:

*Williamson, supra,* 203 Cal.App.2d 8 and *French* v. *French,* 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366]. However, in *Williamson* the pension plan required 20 years of service and the defendant had only been there for 13; in *French* the plan required 14 years of service which defendant had not completed; in either case if the respondent quit his job tomorrow he would lose all of his *rights* to a pension in the future. Here, if Herbert were to quit his job tomorrow it could be considered a break but would not cancel his pension rights.[3] The fact Herbert must wait until he is 55 years old to collect his pension is a condition precedent to the payment of benefits and relates to whether his benefits have "matured," not whether they have vested. (*In re Marriage of Fithian,* 10 Cal.3d 592, 596, fn. 2 [111 Cal.Rptr. 369, 517 P.2d 449].) The fact Herbert cannot receive

"Art. IV, § 5. Early Retirement Pension. An Employee shall be entitled to retire on an Early Retirement Pension if he meets these requirements:

"(a) He has attained age 55 but has not yet attained 62;

"(b) he has Pension Credit for at least 10 years without a break in employment as defined in Article IV, Section 7; and

"(c) he has received Pension Credit for 700 hours of work in Covered Employment since his Contribution Date."

[3]Generally a break in employment results in a forfeiture of pension credits. As set out in the plan the pertinent rule is:

"Art. IV, Section 7. Breaks in Covered Employment After the Contribution Date and Cancellation of Pension Credit.

"(a) General Rule.

"(1) . . . . . . . . . . . . . . . . . .

"(2) After January 1, 1963, it shall be considered a break in employment and an Employee's previously accumulated Pension Credit shall be cancelled if he fails to earn at least one quarter of Future Service Credit in any period of three consecutive calendar years."

However, after age 45 and 10 years of pension the break rule does not apply as long as the employee follows simple notification procedures. These regulations are:

"Art. IV, Section 8. Vesting.

"(a) An Employee who has earned at least 25 years of Pension Credit . . . or who has attained age 45 and has accumulated at least 10 years of Pension Credit, shall have his Pension Credit vested and the break rule, as set forth in Section 7 of this Article IV, shall not operate to deprive him of his previously accumulated Pension Credit, provided he meets the following requirements:

"(1) If, after January 1, 1963, an Employee fails to earn at least one quarter of Future Service Credit in any period of three consecutive calendar years, he must, before the end of the subsequent calendar year, make application to have his Pension Credits vested.

"(2) After receipt of notification from the Board of Trustees of a determination that his Pension Credits are vested, an Employee must keep the Trustees informed of any change in his mailing address so long as he fails to earn one quarter of Future Service Credit in any period of three consecutive calendar years."

Although the pension credits could be lost by failing to notify the appropriate persons during a break in employment, this does not affect vesting in terms of the characterization of these rights as separate or community property. Where "the only condition to the payment of pension benefits is a condition entirely within . . . [Herbert Bruegel's] control . . . this is not the type of uncertainty which precludes division on divorce." (*Bensing* v. *Bensing,* 25 Cal.App.3d 889, 893 [102 Cal.Rptr. 255].)

any benefits until age 55 at the earliest does not affect the character of the pension rights which are unmatured but fully vested (see *Smith* v. *Lewis,* 13 Cal.3d 349, 355, fn. 4 [118 Cal.Rptr. 621, 530 P.2d 589]; *In re Marriage of Peterson, supra,* 41 Cal.App.3d 642, 649).[4]

■ Herbert's pension plan includes among its benefits a series of payments to be made at his death. As to benefits applicable to Herbert the plan provides:

"Art. V Section 2. Death Benefits.
   "(a) Death Before Retirement.
         (i) . . . . . . . . . . . . . . . . . . . . . .
         (ii) If an Employee who . . . has attained age 45 and has accumulated 10 years of Pension Credit dies, his designated beneficiary or the person or persons selected . . . shall, upon application, be entitled to 36 monthly payments in an amount equal to the monthly pension which the deceased Employee would have received had he retired at age 62, based on his years of Pension Credit at the time of his death. The total value of any Pension payments, if any, received by the deceased Employee during a previous period of retirement shall be deducted from the total value of the 36 monthly payments otherwise due the deceased Employee's beneficiary. The monthly payments described herein will begin with the first month following the death of the Employee. . . .

   "(b) Death After Retirement.
         (i) If a Retired Employee dies within the 36-month period beginning with the effective date of such payments, his monthly pension payments shall be continued, until a total of 36 such payments have been made to such Retired Employee, to his designated beneficiary,. . . and shall thereupon cease."

---

[4]Although the California Supreme Court in dictum has said the pension rights of an employee who is still working are an expectancy and are not divisible as community property in a dissolution proceeding (*Phillipson* v. *Board of Administration,* 3 Cal.3d 32, 41, fn. 8 [89 Cal.Rptr. 61, 473 P.2d 765]), later cases implicitly reject this. In *Smith* v. *Lewis,* 13 Cal.3d 349, 355, fn. 4 [118 Cal.Rptr. 621, 530 P.2d 589], the fact that retirement and the receipt of pension benefits were in the future was not a contingency affecting the vesting of the *right* to payment. The case of *In re Marriage of Peterson,* 41 Cal.App.3d 642 [115 Cal.Rptr. 184], dealt with the community property rights in a "deferred retirement" plan. There the husband, aged 55 with 29 years of service, was not eligible for the "immediate retirement plan" but was eligible for the deferred plan which vested after 5 years of service and was payable at age 62. Although he was still working, the wife was entitled to a share of this vested but unmatured pension.

Evelyn asks us to consider this part of the pension plan as a life insurance policy in order to avoid "the rule that the wife's vested rights in the husband's pension plan are limited to amounts payable to him while he is living." (*In re Marriage of Peterson, supra,* 41 Cal.App.3d 642, 654; see *Benson* v. *City of Los Angeles,* 60 Cal.2d 355, 361 [33 Cal.Rptr. 257, 384 P.2d 649]). However, if Herbert receives 36 or more installments and then dies, no further payments will be made. The plan is not for life insurance; rather, it guarantees a minimum number of pension payments to Herbert or his beneficiary. In *Benson* the ex-wife was denied an interest in a widow's pension. Her interest was deemed contingent since no one knew who the widow would be or whether she would survive until the pensioner died. Likewise, here Evelyn's interest in the guaranteed payment is contingent since the identity of the beneficiary and whether that person survives will not be known until Herbert's death.

Because the pension plan has vested, it is community property subject to division between the spouses. However, Evelyn has no community interest in the guaranteed payment feature of the plan insofar as it relates to payments due after Herbert's death. Since the pension plan comprises the bulk of the community assets, the trial court may wish also to review its earlier determinations on spousal and child support.

Judgment reversed.

Coughlin, J.,* and Whelan, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.