[S.F. No. 24050. Jan. 29, 1980.]

HELEN HENN, Plaintiff and Appellant, v.
HENRY HENN, Defendant and Respondent.

**COUNSEL**

Saul M. Weingarten, Dennis M. Hart and Mark P. Leach for Plaintiff and Appellant.

Joseph Posner and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Arthur Andreas for Defendant and Respondent.

**OPINION**

**BIRD, C. J.**—This court must determine whether a former spouse may bring an action to establish her community property interest in her ex-husband's federal military pension which was not adjudicated or distributed in the final decree of dissolution.

I

Helen and Henry Henn were married in 1945. After 25 years, Henry petitioned for dissolution of their marriage in the Superior Court for the City and County of San Francisco. An interlocutory decree was granted on February 22, 1971, and a final judgment issued on May 19, 1971. The decree incorporated a property settlement which awarded the parties specific items of the marital community as their separate property. The decree also awarded Helen $500 monthly support payments until the death of either party or her remarriage.

Neither the pleadings nor the judgment made mention of the fully matured federal military retirement pension that Henry was receiving at the time of the interlocutory decree. The pension had been partially earned during the marriage, and its existence was known to Helen at the time of the dissolution proceedings. Henry concedes that the court made no determination with respect to the pension.

On October 17, 1973, in response to a motion by Henry in the San Francisco Superior Court to reduce the amount of Helen's spousal support, Helen moved for an order to show cause why Henry's retirement pension should not be divided as community property. In support of this motion, Helen filed a short declaration setting forth the nature of her interest in the pension and alleging that she had never relinquished her community property rights in that asset. Henry opposed Helen's motion. Admitting that at the time of the interlocutory decree his pension was in part community property, he argued that the court lacked jurisdiction to modify the property settlement incorporated in the judgment of dissolution since there was no showing of extrinsic fraud or mistake. Helen's motion was denied without opinion on March 5, 1974.

Approximately two and one half years later, Helen filed the underlying complaint in the Superior Court of San Mateo County. Helen sought (1) a determination that Henry's military pension was community property to the extent earned by Henry during their marriage; (2) a full accounting of all pension payments received by Henry since March 1, 1971; and (3) a division of the community property portion of the pension. In his answer to the complaint, Henry raised the defense of res judicata based on the original decree of dissolution and the 1974 denial of Helen's motion. He also contended that these proceedings, together with Helen's recovery in settlement of a malpractice action against her former attorneys, estopped her from maintaining the present action.[1] After a separate trial on these affirmative defenses, the trial court entered judgment on Henry's behalf. Helen appealed.

---

[1] On November 8, 1974, Helen filed a malpractice action against the attorneys who represented her during the dissolution proceedings. She alleged that she had detrimentally relied upon their advice that Henry's pension was his separate property. That case was settled in April 1976. On appeal, Henry denied that he urged "the doctrine of election of remedies as an affirmative defense," and conceded "that a litigant may pursue more than one remedy against different persons." Since Henry has not argued on appeal that Helen's recovery from her former attorneys prevents her from maintaining the present action, or otherwise limits her rights against him, that issue is not before this court.

## II

■ Under California law, federal military pensions are community property to the extent they are earned during the marriage. (*French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366]; *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)[2] However, in 1971—the year of the Henns' dissolution—the question as to whether federal military pensions could be divided as community property without violating the supremacy clause of the United States Constitution "was clearly an arguable one upon which reasonable lawyers could differ." (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 357 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231].)

In 1974, this court unanimously held in *In re Fithian* (1974) 10 Cal.3d 592, 595 [111 Cal.Rptr. 369, 517 P.2d 449], that "federal military retirement pay is properly the subject of California community property law...."[3] It was noted that "the application of California community property law [does not] interfere[ ] in any way with the administration or goals of the federal military retirement pay system ...." (*Id.*, at p. 604.)

■ Although the Henns' dissolution of marriage and property settlement occurred before this court's decision in *Fithian,* the principles set forth therein apply to Henry's military pension. It is the general rule that a decision of this court, even when overruling a settled rule of law, is fully retroactive in application. (See *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943, 954 [148 Cal.Rptr. 379, 582 P.2d 970]; *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].)

---

[2]This court overruled *French* v. *French, supra,* 17 Cal.2d 775 insofar as that decision held that in order for a pension to be divided as community property the employee spouse must have obtained a vested right to its receipt during the life of the marriage. (See *In re Marriage of Brown, supra,* 15 Cal.3d 838.)

[3]The recent decision of the United States Supreme Court in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572 [59 L.Ed.2d 1, 99 S.Ct. 802] does not compel reconsideration of our holding in *Fithian, supra,* certiorari denied 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41]. In *Hisquierdo,* the Supreme Court held that federal benefits available under the Railroad Retirement Act of 1974 may not be divided as community property by state courts. However, *Hisquierdo* was explicitly grounded on "the totality of the statutory scheme for railroad retirement benefits including its special tax funding, and its unique provisions and legislative history indicating that upon dissolution of marriage the nonemployee spouse should receive no part of the employee spouse's benefits." (*Gorman* v. *Gorman* (1979) 90 Cal.App.3d 454, 462 [153 Cal.Rptr. 479].)

When exceptions to this rule are adopted, they are based primarily upon consideration of the extent of public reliance on the prior rule and of the foreseeability of the new rule. (See, e.g., *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 400 [134 Cal.Rptr. 206, 556 P.2d 306]; *In re Marriage of Brown, supra,* 15 Cal.3d at p. 850; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

*Fithian* did not overturn a settled rule of law. Neither this court nor any California Court of Appeal had ever held that the supremacy clause of the United States Constitution precluded the division of federal military retirement pay as community property under state law. (See *Fithian, supra,* 10 Cal.3d at pp. 596-597.) Since it was never the law that the supremacy clause requires federal military retirement pay to be excepted from treatment as community property under the California Civil Code, it would be anomalous for this court to now establish this erroneous proposition as the rule governing pensions accruing prior to *Fithian.* To do so would deprive individuals of their valid rights under California law.

It is clear that Henry's entitlement to his federal military pension was fully vested and matured in 1971 at the time of the dissolution of the Henns' marriage. To the extent earned during the marriage, it was part of their community property. However, Henry argues that Helen is prevented from seeking a judicial division of her community property interest in this asset under the principles of res judicata and collateral estoppel. These defenses are grounded on the original decree of dissolution and property settlement and the subsequent denial of Helen's motion to modify the original decree to divide the military pension.

The doctrine of res judicata has long been recognized to have a dual aspect. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Todhunter* v. *Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916]. See also 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 148, p. 3293.) "In its primary aspect the doctrine of res judicata operates as a bar to the maintenance of a second suit between the same parties on the same cause of action." (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) Also, the doctrine comes into play in situations involving a second suit, not necessarily between the same parties, which is based upon a different cause of action. There "[t]he prior judgment is not a com-

plete bar, but it 'operates [against the party against whom it was obtained] as an estoppel[4] or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.'" (*Id.*, citations omitted.) Neither aspect is applicable to the original judgment of dissolution and property settlement in this case.

■ Under California law, a spouse's entitlement to a share of the community property arises at the time that the property is acquired. (Civ. Code, §§ 5107, 5108, 5110.) That interest is not altered except by judicial decree or an agreement between the parties. Hence "under settled principles of California community property law, 'property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is subject to future litigation, the parties being tenants in common meanwhile.'" (*In re Marriage of Brown, supra,* 15 Cal.3d at pp. 850-851, quoting *In re Marriage of Elkins* (1972) 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59]. Accord *Estate of Williams* (1950) 36 Cal.2d 289, 292-293 [223 P.2d 248, 22 A.L.R.2d 716]; *Lewis* v. *Superior Court* (1978) 77 Cal.App.3d 844, 847-850 [144 Cal.Rptr. 1]; *Irwin* v. *Irwin* (1977) 69 Cal.App.3d 317, 320-321 [138 Cal.Rptr. 9]; *Kelly* v. *Kelly* (1977) 73 Cal.App.3d 672, 676 [141 Cal.Rptr. 33].) This rule applies to partial divisions of community property as well as divorces unaccompanied by any property adjudication whatsoever.

Helen's interest in Henry's military pension arose independent of and predates the original decree of dissolution and property settlement. This interest was separate and distinct from her interest in the items of community property which were divided at the time of the dissolution. Since it is conceded that the issue of Henry's military pension was not before the court which issued the final decree, the judgment of that court cannot be said to have extinguished Helen's putative interest in that asset.

■ Further, Helen cannot be collaterally estopped from litigating her community property right in that pension. Henry has not asserted that Helen is relying upon some factual or legal theory which was adjudicated in the prior litigation or which would have had to have been adjudicated if it had been raised at the time. (E.g., *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202-205 [99 P.2d 652, 101 P.2d 497].) Rather, Henry argues that Helen's failure to assert her community property right in the pension, when there was an adjudication of her entitlement

---

[4]This second aspect is referred to as judgment by estoppel or, more commonly, collateral estoppel. (See *Clark* v. *Lesher, supra,* 46 Cal.2d at p. 880.)

to other assets of the community, should preclude her from asserting her rights to the pension now.

The doctrine of collateral estoppel cannot be stretched to compel such a result. (*Gorman* v. *Gorman, supra,* 90 Cal.App.3d at pp. 464-465; *Lewis* v. *Superior Court, supra,* 77 Cal.App.3d at p. 852, fn. 2.)[5] As explained in *Carroll* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 490 [143 Cal.Rptr. 772], the rule prohibiting the raising of any factual or legal contentions which were not actually asserted but which were within the scope of a prior action, "does not mean that issues not litigated and determined are binding in a subsequent proceeding on a new cause of action. Rather, it means that once an issue is litigated and determined, it is binding in a subsequent action notwithstanding that a party may have omitted to raise matters for or against it which if asserted may have produced a different outcome." Hence, the doctrine of collateral estoppel is not applicable here because Henry failed to demonstrate that Helen is relying upon some specific factual or legal contention which would have been relevant to the adjudication of the parties' rights to the property distributed in the 1971 decree if it had been raised.[6]

█ Next, Henry argues that the denial of Helen's motion to modify the original decree in 1974 is a bar to the present action. The trial court summarily denied Helen's motion and Henry contends that this denial was a favorable ruling on the merit of his res judicata defense. Henry's position is that since Helen did not appeal the denial the ruling must stand although it is erroneous.

It is not clear from the record whether the denial of Helen's motion was based on the merit of her community property claim, the res judi-

---

[5]*In re Marriage of Snyder* (1979) 95 Cal.App.3d 636 [157 Cal.Rptr. 196]; *Fenn* v. *Harris* (1979) 91 Cal.App.3d 772 [154 Cal.Rptr. 21]; *Sangiolo* v. *Sangiolo* (1978) 87 Cal.App.3d 511 [151 Cal.Rptr. 27]; *Bridges* v. *Bridges* (1978) 82 Cal.App.3d 976 [147 Cal.Rptr. 471]. Contra, *Kelly* v. *Kelly, supra,* 73 Cal.App.3d at pages 677-678, discussed *post* in footnote 6.

[6]In support of his argument, Henry relies principally upon *Kelly* v. *Kelly, supra,* 73 Cal.App.3d 672. That court, faced with a case similar to the instant one in all relevant considerations, ruled that the existence of a prior judicial division of community property precluded the plaintiff from litigating her entitlement to a pension which had not been adjudicated in the earlier proceeding. *Kelly* is disapproved to the extent that it stands for the proposition that any judicial division of community property necessarily precludes the subsequent litigation of community property rights in an asset known to exist at the time of the earlier proceedings, and which could have been adjudicated at that time.

cata defense asserted by Henry, or some procedural defect such as lack of jurisdiction. There are no reported decisions that have held that a community property claim to an asset left unmentioned in a prior judicial division of community property may be adjudicated in a motion to modify the prior decree. The only reported decisions that address this issue correctly conclude that such claims may only be adjudicated in a separate action. (See *Bodle* v. *Bodle* (1978) 76 Cal.App.3d 758, 767 [143 Cal.Rptr. 115]; *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860, fn. 1 [137 Cal.Rptr. 670].) Under these circumstances, Henry has not established that the motion was denied because Helen's claim lacked merit or was barred by the prior judicial division of community property.[7] Since it is not possible to ascertain from the record the trial court's basis for denying Helen's motion, that court's action cannot be used to bar the present action.

The enforcement of Helen's rights in the pension payments received by Henry since the 1971 adjudication and distribution of the community assets does not present any substantial danger of unjust enrichment. On remand, Henry may seek to limit retrospective enforcement of Helen's claim on an equitable estoppel theory by demonstrating that she in fact received additional support payments in lieu of a share in the pension.[8] (See Civ. Code, § 4800, subds. (a), (b).)

If Helen is allowed to recover her share of the pension payments received by Henry between 1971 and the initiation of the present action, a problem may arise. It may be substantially more burdensome for Henry to account for the pension payments he has received since the

---

[7]Since Henry did not deny the fact that the portion of the pension earned during marriage was community property, and given that his res judicata defense was fatally flawed, the procedural ground was the only valid basis for denial. "Jurisdiction over a cause or parties after a final judgment, order or decree is exceptional and limited to special situations." (1 Witkin, Cal. Procedure (2d ed. 1971) Jurisdiction, § 286, p. 827.) The Legislature has not provided courts of dissolution with continuing jurisdiction to modify a judgment dividing community property after it has become final. Nor did the original judgment in this case reserve such power to the court. (E.g. *In re Marriage of Borges* (1978) 83 Cal.App.3d 771, 775 [148 Cal.Rptr. 118].) However, it is the ambiguity of the denial, not the court's lack of jurisdiction over the subject matter of the controversy, that prevents that action from barring the present litigation. If Henry had established that the denial constituted an adjudication of the merit of Helen's claim or his res judicata defense, it could have been entitled to res judicata effect as a valid exercise of the court's general equity jurisdiction. (Cf. *Estate of Gilmaker* (1962) 57 Cal.2d 627, 630 [21 Cal.Rptr. 585, 371 P.2d 321].)

[8]Of course, the defendant spouse may seek a prospective modification of his or her support payments in light of any new partition of an asset not previously adjudicated.

1971 division of community assets than it would have been for him to have complied with a partition effected at that time. Henry is likely to have treated the asset as his separate property and disposed of it according to his needs. The court is confident that this problem may be adequately addressed under the defense of laches. The exercise of a court's authority to so limit equitable relief will provide litigants with an additional incentive to assert all tenable community property rights in assets known to exist at the time of the initial judicial distribution of the marital community.

The judgment is reversed.

Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.