[Civ. No. 21743. Third Dist. May 20, 1983.]

IRENE CHIRMSIDE, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

COUNSEL

Hansen, Boyd, Culhane & Mounier, Pamela Paris and Kevin R. Culhane for Plaintiff and Appellant.

Cynthia G. Besemer for Defendant and Respondent.

OPINION

CARR, J.—In this appeal we are asked to approve an extension of the terminable interest doctrine to community contributions in a fully vested public retirement plan. We decline to so do and reverse the judgment herein.

The facts disclose that William and Irene Chirmside were married January 27, 1941. In 1946, William Chirmside commenced working for the San Bernardino City Water Department and on March 1, 1948, became a member of the Public Employees' Retirement System (PERS). On November 13, 1975, the parties were divorced. The final judgment of dissolution did not adjudicate the parties' entitlements to William's PERS account, nor was the pension even alluded to in either the petition, response or decree.

William retired February 26, 1977, at which time the balance of his contributions to his account totaled $24,827.45, including interest. He elected to take his retirement benefits under "optional settlement one," which provided for monthly payments of $958.01, the balance of any of his contributions at his death to be paid to his designated beneficiary.[1] He designated his sister, Isabel Wall, as beneficiary.

At his death on February 18, 1980, the balance of his accumulated contributions was $18,773.37. Isabel Wall claimed the remaining contributions as the designated beneficiary. Appellant also made a claim for her community property interest in the remaining contributions. Following a hearing before an administrative law judge, Isabel Wall's claim was granted and appellant's denied. Thereafter, appellant's petition for mandate in the superior court was denied. This appeal followed.

---

[1]Government Code section 21332 defines "optional settlement one" as follows: "Optional settlement one consists of the right to have a retirement allowance paid him until his death and if he dies before he receives in annuity payments the amount of his accumulated contributions at retirement, to have the balance at death paid to his beneficiary or estate."

DISCUSSION

I

The critical question presented is whether appellant's community property interest in her former husband's PERS account terminated with his death. The administrative law judge and the trial court both felt constrained to so hold by the "terminable interest doctrine" established in *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649], and *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]. Briefly stated, this judicially created rule recognizes that an interest in a retirement plan traceable to contributions of community funds or to community labor constitutes community property; however, the interest of the nonparticipant spouse does not extend to benefits payable after the death of either spouse.[2] Under the doctrine the nonemployee spouse takes a community share in the retirement benefits while the employee spouse is living (see, e.g., *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 43 [89 Cal.Rptr. 61, 473 P.2d 765]; *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 656 [115 Cal.Rptr. 184]), but cannot alienate or devise those benefits (*Waite* v. *Waite, supra,* 6 Cal.3d at p. 474), which may be payable to a beneficiary other than the nonemployee spouse at the death of the employee, if so designated by the employee (*In re Marriage of Bruegl* (1975) 47 Cal.App.3d 201, 206 [120 Cal.Rptr. 597]), or to a subsequent spouse who qualifies under the pension plan as the employee's "survivor" or "widow." (*Benson* v. *City of Los Angeles, supra,* 60 Cal.2d at p. 360.)

In the seminal case of *Benson* v. *City of Los Angeles,* the pension in question was by the terms of the pension plan payable to the "widow" of a member of the city fire department in the amount of one-half the deceased member's salary. (60 Cal.2d at p. 359.) Teresa Benson had been married to August Benson for 20 years of his service in the fire department. After August's retirement, August and Teresa divorced and August married Olive. (*Id.,* at pp. 357-358.) A judgment awarding the entire pension to Olive was affirmed, the court reasoning the widow's right to the pension was not "vested" until the occurrence of the contingency upon which payment was predicated, death of the PERS member. (*Id.,* at p. 361.) Thus, the only interest in the pension which the community could enforce were the payments to August and upon his death, to his "widow." (*Id.,* at p. 360.) This apparently unfair result was deemed necessary to permit the city flexibility in making reasonable modifications in the retirement scheme, which might be defeated by the vesting of rights in a nonemployee. (*Id.,* at pp. 361-362.) As August's "widow," Olive was entitled to the pension.

---

[2]For a comprehensive discussion of the doctrine, see Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 443-482. (Hereafter referred to as *Reppy.*)

*Waite* involved a monthly pension payable to a retired superior court judge. As part of the divorce decree the trial court awarded the judge's wife *or her devisees or heirs* one-half of all the pension benefits payable to the retired judge. (6 Cal.3d at p. 466.) The pension benefits were confirmed as community property, but the judgment insofar as it allowed the wife to devise the benefits was reversed. (*Id.,* at pp. 472-474.) The court reasoned the state's concern was for the subsistence of the employee and his spouse, and not some other person or organization. (*Id.,* at p. 473.) Any unequal division of the pension occurring through the earlier death of the wife could be remedied by awarding the entire pension to the judge and compensating the wife out of other community assets. (*Id.,* at pp. 473-474.)

These cases established the "rule" that the community interest in a pension terminates upon the death of *either* spouse. Subsequent cases have applied the rule in a variety of factual situations without examining its theoretical basis or the validity of its application to different facts. For example, the trial court in the instant case, acknowledging the unfairness of the result, felt compelled to its conclusion by stare decisis. We disagree.

The doctrine has been criticized by both legal commentators (see *Reppy, supra*; and Soloman, *Beyond Preemption: Accommodation of the Nonemployee Spouse's Interest Under ERISA* (1980) 31 Hastings L.J. 1021, 1053-1059), and the courts which must apply it. (*In re Marriage of Peterson, supra,* 41 Cal.App.3d at p. 656.) The primary complaints include its patent unfairness to the nonemployee spouse, its reliance on the implied repeal of statutes prohibiting the unilateral gift of community funds, and its failure to take into account the nature of the death benefits involved. All these criticisms have merit, but the last is the avenue which affords relief in the present case.

None of the cases in which the terminable interest doctrine has been applied involved *only* the accumulated contributions of the employee spouse.[3] At issue in *Benson* was a widow's death benefit, which, although purchased in part with withholdings from the husband's earnings, was payable for the widow's life at a rate of one-half the deceased employee spouse's salary. (*Benson* v. *City of Los Angeles, supra,* 60 Cal.2d at pp. 358-359.) This pension benefit could involve significantly more than just the employee's withholdings, depending upon the widow's life span. Similarly, *Waite* involved a monthly pension which was unrelated to the employee's contributions. (*Waite, supra,* 6 Cal.3d at p. 465.) Other cases cited by the parties applying the terminable interest doctrine have likewise considered pension packages involving more than just the employee's contributions.[4] The distinction between accumulated contributions and a pen-

---

[3]Appellant has conceded any interest in the $500 lump-sum death benefit payable to William's designated beneficiary pursuant to Government Code section 21367.51.

[4]*Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, 40, involved pension benefits

sion package purchased with employee contributions may not appear significant when viewed in relation to community property principles, but acquires significance because of the reasoning of the *Benson-Waite* line of cases. Since we are concerned solely with the employee's accumulated contributions to the pension system, the public entity's interest in maintaining the "flexibility" of its pension program, found so compelling in *Benson* (60 Cal.2d at p. 362), is not present here. The only question is the disposition to be made of the withheld salary remaining in William's PERS account. We are not determining how PERS is to distribute a surviving spouse's pension or any other pension. The case is more analogous to the distribution of a savings account containing community funds than the cited pension cases.

Additional support for our conclusion is found in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], wherein the court held that nonvested pension rights derived from employment during marriage are community property subject to division in a dissolution proceeding. (*Id.,* at p. 842.)[5] *Brown* represents a repudiation of the idea that the nonemployee spouse's interest in a pension is contingent or not "vested" until he or she actually begins to receive it. (*In re Marriage of Peterson, supra,* 41 Cal.App.3d at p. 656.) While the holding in *Brown* can be harmonized with the *Benson-Waite* rule as to the community interest in the pension while both spouses are alive (see e.g., *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32), it clearly undercuts the rationale of the terminable interest doctrine in terminating a recognized property interest of the nonemployee spouse because the interest is not "vested."

The administrative law judge recognized the impact of *Brown* on the *Benson-Waite* rule, particularly in *In re Marriage of Peterson, supra,* 41 Cal.App.3d 642, but felt constrained by *In re Marriage of Lionberger, supra,* 97 Cal. App.3d 56, a post-*Brown* case. Respondent relies heavily on *Lionberger,* wherein the divorce decree prohibited the employee-husband from electing a

---

payable during the employee's life consisting of both employee and employer contributions. *In re Marriage of Peterson, supra,* 41 Cal.App.3d at page 652 also involved a "financial retirement package", only part of which was the employee's contributions. *In re Marriage of Bruegl, supra,* 47 Cal.App.3d at page 203, concerned a *noncontributory* pension fund. In *In re Marriage of Lionberger* (1979) 97 Cal.App.3d 56, 66 [158 Cal.Rptr. 535], the pension benefits were apparently determined by the number of "credits" the employee accrued based on his time of service, rather than his contributions. Finally, in *Berry* v. *Board of Retirement* (1972) 23 Cal.App.3d 757 [100 Cal.Rptr. 549], the exact nature of the monies in the retirement fund was unclear, but in any event, the court held the nonemployee spouse's interest in the pension benefits was defeated by her stipulation in the divorce decree not to partake of the pension benefits until the employee did so.

[5]Overruling *French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366], and disapproving language to the contrary in *Waite* v. *Waite, supra*; *Phillipson* v. *Board of Administration, supra*; *In re Marriage of Bruegl, supra*; and *In re Marriage of Peterson, supra.* (See *In re Marriage of Brown, supra,* 15 Cal.3d at p. 851, fn. 14.)

pension option which would decrease his monthly annuity and increase the benefits to the surviving spouse. The court stated, "[b]ecause the divorced wife's right to share in the pension benefits terminates with the death of the husband, the monetary value of her interest in the pension benefits would be reduced by such an election." (*In re Marriage of Lionberger, supra,* 97 Cal. App.3d at p. 67.) *Lionberger* did not hold the divorced wife's interest in pension benefits terminated at her former husband's death but merely assumed this to reinforce its restriction on the former husband's ability to elect a new pension option. The clear purpose of *Lionberger* was to avoid the effect of the terminable interest doctrine. We do not consider or accept *Lionberger* as authority for the assertion that the terminable interest doctrine has survived *Brown.*

*Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], in conjunction with *In re Marriage of Brown, supra,* 15 Cal.3d 838, provides persuasive authority that the terminable interest doctrine has passed into legal extinction. The trial court in the instant case recognized *Henn* "would help us if we were concerned with the retirement benefits of a living employee." The court found, however, "*Henn* does not provide an answer because we are concerned with death benefits." We disagree. We are concerned with neither retirement benefits nor death benefits, but with the *accumulated contributions* of William. Nor do we find anything in *Henn* which limits its holding to living parties. *Henn* held that a community asset which is not mentioned in the pleadings as community property and is left unadjudicated by the divorce decree is subject to future litigation, the parties, until adjudication, occupying the status of tenants in common. ■ The rule allowing subsequent litigation is applicable if there was a partial division of the community property or no adjudication at all. (26 Cal.3d at p. 330.) Under *Henn,* Irene's community interest in the accumulated contributions became an undivided one-half interest as a tenant in common with her former husband. His death cannot operate to deprive her of this tenancy in common interest.

■ However, it is unnecessary to our disposition in this case to determine whether *Brown* and *Henn* have dealt a death blow to the terminable interest doctrine. We have concluded the accumulated contributions of William are distinguishable from the type of pension or death benefits addressed in the *Benson-Waite* line of cases in that such contributions represent only withheld earnings during marriage. This money was unquestionably community property. (Civ. Code, § 687.) To hold that William could give his former wife's interest in the account to his sister by his designation of beneficiary in his pension agreement would violate the antigift provisions of Civil Code section 5125, subdivision (b), and Probate Code section 201.[6] This court has previously

---

[6]Civil Code section 5125, subdivision (b) provides: "A spouse may not make a gift of community personal property, or dispose of community personal property without a valuable con-

stated these antigift statutes deprive an employee of the power to designate a beneficiary of community property pension benefits other than the nonemployee spouse. (*Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 300 [27 Cal.Rptr. 297][7] disapproved on another point in *Mass* v. *Board of Education* (1964) 61 Cal.2d 612, 627, fn. 9 [39 Cal.Rptr. 739, 394 P.2d 579]; see also *Patillo* v. *Norris* (1976) 65 Cal.App.3d 209, 217 [135 Cal.Rptr. 210].) To allow William's designation of his sister as beneficiary to defeat appellant's interest in the accumulated contributions would be tantamount to a holding that Government Code sections 21332 and 21367.6 (providing for a designated beneficiary for the unpaid accumulated contributions) work an implied repeal of the antigift provisions. This we are unwilling to do. ■ "Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws. [Citation.] Furthermore, we must assume that when passing a statute the Legislature is aware of existing related laws and intends to maintain a consistent body of rules." (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) We find no legislative intent, express or implied, in the statutes governing the Public Employees' Retirement System (Gov. Code, § 20000 et seq.) to repeal the antigift provisions concerning the community property interest in a deceased employee's accumulated contributions to his PERS account.[8] Instead we conclude the nonemployee's community property interest in the accumulated contributions can be harmonized with the employee's power to designate a beneficiary by limiting the employee's power to his community property interest in the remaining contributions. In this way, each statute is given effect, and the unfairness perceived by Justice Kaus in *Peterson* can be avoided.[9] We must further consider how much of the remaining funds are subject to appellant's claim.

---

sideration, without the written consent of the other spouse."

Probate Code section 201 provides: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code."

[7]*Jorgensen* v. *Cranston, supra,* has been called the "strongest recent case" in an "anti-Benson-Waite line of authority . . . ." (See *Reppy, supra,* 25 UCLA L.Rev. at p. 461.) In *Jorgensen,* we stated, "under our community property system, and using the analogy of insurance proceeds, the [employee] would not have had the power without his wife's consent to name another beneficiary as to all of the benefits. This would have been a gift of the community." (211 Cal.App.2d at p. 300.) The "insurance proceeds" analogy to which we referred is the well established rule that a wife may recover from the beneficiaries one-half of the proceeds of a life insurance policy on her deceased husband's life if the policy was purchased without her consent using community funds. (*Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal. Rptr. 13, 353 P.2d 725].)

[8]As previously noted, we are not concerned herein with a surviving spouse's pension or death benefits. Accordingly, we express no opinion on any implied repeal of the antigift statutes as regards the designation of beneficiary provisions for such benefits.

[9]In applying the terminable interest doctrine Justice Kaus stated, "[w]e do not believe the rule which we must follow is fair. [William's] pension rights constitute a bundle to which [Irene], as

## II

■ William was employed and accrued retirement benefits for 347 months. Appellant and William were married for 332 months of this period. The fraction of 332/347 thus gives the community property interest in the accumulated contributions according to the "time rule" method. (See *In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522 [137 Cal.Rptr. 318].) Neither party contests the validity of this fraction, but they argue over the total amount to which it should be applied.

Appellant urges the fraction formula should be applied to William's total contributions to the PERS account, $24,827.45, which yields a community interest in the account of $19,066.15, of which her one-half share is $9,533.07. She contends this calculation results in full satisfaction of her community property interest without prejudice to PERS as the $18,773.37 in remaining unpaid contributions is more than sufficient to cover her claim.

PERS on behalf of Isabel Wall urges the fraction formula should be applied to the $18,773.37 remaining in the account, as the system has been discharged from liability for any amounts previously paid by the operation of Government Code section 21210.[10] We agree. Though the accumulated contributions retained their community character while in the hands of PERS, no claim was made by appellant to PERS who apparently remained unaware of such claim until after the death of William. There is no basis to hold the funds paid out to William were exclusively from his share of the asset. PERS had no duty to so segregate the funds and cannot be held accountable for failing to have done so.

Finally, we note each party characterizes the result sought by the other as "unjust." At the conclusion of *Henn*, the Court discussed the inequity of allowing a late claim on community property and stated its confidence the problem could be addressed by limiting equitable relief through the defense of laches. (*Henn, supra,* 26 Cal.3d at p. 333.) We feel this discussion is appropriate to the limitation we place on the relief accorded appellant. Having allowed William to draw on the community funds without complaint during his retirement, it seems inequitable to allow her to now claim her share of those funds to the detriment

---

a partner in the community during the years of marriage contributed her equal share. Why should she be deprived of her right to any single stick in the bundle?" (*In re Marriage of Peterson, supra,* 41 Cal.App.3d at p. 656.)

[10]Government Code section 21210 provides: "Notwithstanding the provisions of Sections 5105 and 5125 of the Civil Code, whenever payment or refund is made by this system to a member, former member, beneficiary of a member or estate of a member pursuant to any provision of this part, such payment shall fully discharge this system from all adverse claims thereto unless, before such payment or refund is made, this system has received at its office in Sacramento written notice by or on behalf of some other person that such person claims to be entitled to such payment or refund."

of William's designated beneficiary. Accordingly, we hold the "time rule" fraction formula for determining the community interest in William's PERS account should be applied to the accumulated contributions remaining unpaid in the account.

The judgment is reversed.

Regan, Acting P. J., and Evans, J., concurred.