[No. A055473. First Dist., Div. Five. Aug. 20, 1992.*]

In re the Marriage of CLIFFORD G. and CONSTANCE J. ALLEN.
CLIFFORD G. ALLEN, Appellant, v.
TAMI L. GRAHAM, as Executrix, etc., Respondent.

---

*Review granted November 12, 1992. Opinion ordered published by Supreme Court December 17, 1992. Review dismissed January 28, 1993, pursuant to rule 29-4(c), California Rules of Court, with directions that opinion remain published.

1226

COUNSEL

Jan Eric Bolt for Appellant.

Phillips, Greenberg, Dolven & Strain, Theodore W. Phillips, Belden, Abbey, Weitzenberg & Kelly, Byrne & Bertoli and Dennis J. Byrne for Respondent.

OPINION

KING, Acting P. J.—In this case we hold that where there has been a judgment terminating marital status and reserving jurisdiction to determine all other pending issues and one former spouse dies before the court determines the marital property rights of the parties, property held by the parties

in joint tenancy does not pass to the other former spouse as the surviving joint tenant, but is divided in the marital dissolution action pursuant to the principles of the Family Law Act. Thus, decedent's share of marital property held in joint tenancy will pass through decedent's estate to his or her heirs. This result acknowledges and confirms the right of decedent's heirs to receive decedent's share of marital property acquired by virtue of the community effort, and eliminates an unjustifiable windfall to the surviving former spouse. It also carries out the intentions and expectations of the parties upon termination of their marital status.

I

*Facts*

Cliff and Constance Allen were married on April 19, 1980.[1] During their marriage, the parties held two pieces of residential real property as well as bank accounts and other assets in joint tenancy. On February 16, 1989, Cliff filed a petition for dissolution of marriage. Among other things, the petition requested the court to confirm Cliff's community and separate interest in the property held by the parties in joint tenancy.

On March 9, 1989, the parties stipulated to a temporary order which governed their rights to marital property pending a court-ordered division of property. In pertinent part, the stipulation and order provided for mortgage payments, property tax payments, maintenance expenses and homeowner's insurance and made provisions with respect to the use and possession of the real property held in joint tenancy "subject to review in final equalization" or "until further order of the court." Provisions were also made with respect to the parties' various bank accounts, charge cards and the trust account used in Constance's business.

On December 22, 1989, the parties filed an appearance, stipulation and waiver wherein they stipulated that the issue of the status of their marriage could be bifurcated from the other issues and that a judgment dissolving their marriage could be entered by ex parte application. On the same day Constance requested an uncontested dissolution with regard to marital status only, effective upon entry of judgment. On December 29, 1989, the court entered the requested judgment of dissolution and expressly reserved jurisdiction "over all other issues."

Less than a week after the dissolution was granted, Constance died. She left a will naming her only child from a prior marriage, Tami L. Graham, as the sole beneficiary of her estate. On November 26, 1990, the court allowed

---

[1]For ease of reference, we will refer to the parties by their first names, Cliff and Constance. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

Tami to be substituted into the marital dissolution proceedings on behalf of decedent's estate for the purpose of resolving the remaining issues. On April 16, 1991, Tami filed her response to the petition and, among other things, requested that the court confirm her mother's community and separate interest in the real and personal property held by the parties in joint tenancy during their marriage.

Pursuant to the stipulation of the parties, the issue of whether the property held by Cliff and Constance in joint tenancy was community property for purposes of division of property was bifurcated from all other issues and set for trial. If the property was community property, as alleged by Tami, her mother's community half passed to her by virtue of the will. If the property was held in joint tenancy, as alleged by Cliff, he became sole owner of the property by right of survivorship. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1992) ¶ 8:14.2.)

At trial Tami argued that the assertion and reservation of jurisdiction by the family law court automatically brought into play the presumption set out in Civil Code section 4800.1[2] that "upon dissolution of marriage" property held in joint tenancy is community property, which presumption may be rebutted by a writing in the deed or by a written agreement between the parties.[3] She also argued there was sufficient evidence to establish that the parties mutually treated the joint tenancy as severed. Cliff argued that Tami was not entitled to rely on any of the presumptions or principles applicable to the division of marital property in dissolution proceedings, including section 4800.1, because Constance died before any of the property issues were adjudicated. Consequently, he argued, the only way the joint tenancy property could be transmuted into community property was according to section 5110.730, which requires that the spouses mutually agree in writing that the joint tenancy be severed.

The court held that the real and personal property held by the parties in joint tenancy was community property.[4] Additionally, the court stated "that there was specific agreed upon movement by the parties through their

---

[2]Unless otherwise indicated, all further statutory references are to the Civil Code.

[3]Section 4800.1, subdivision (b) states: "For the purpose of division of property upon dissolution of marriage or legal separation, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, tenancy by the entirety, or as community property is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (1) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (2) Proof that the parties have made a written agreement that the property is separate property."

[4]There was no request for a statement of decision under Code of Civil Procedure section 632. We therefore presume "that the trial court made all factual findings necessary to support

stipulation of March 9, 1989, and activities thereafter which evidence the desire to treat their property as community property in the upcoming dissolution."

## II

### Did the Family Law Court Have Jurisdiction to Decide the Remaining Property Issues?

We initially consider Cliff's argument that the family law court had no jurisdiction, after Constance's death, to determine the unadjudicated issues. This argument was answered, adversely to Cliff's position, in *Kinsler v. Superior Court* (1981) 121 Cal.App.3d 808 [175 Cal.Rptr. 564]. In facts that parallel our own, *Kinsler* considered whether the death of a party to a dissolution proceeding, after entry of judgment dissolving the parties' marital status, abated the action and deprived the court of jurisdiction to decide the remaining issues in the case. The appellate court concluded that jurisdiction was not impaired when, prior to the party's death, a judgment dissolving the marriage had been entered containing an express reservation of jurisdiction to decide the remaining issues. The proper procedure under those circumstances was to substitute the estate of the deceased spouse as a party to the dissolution proceeding. (*Id.* at p. 812.)

The *Kinsler* court took pains to point out that there is a meaningful difference between cases in which a party dies before a judgment of dissolution is entered and cases in which a party dies after the entry of judgment. Where a party dies before the marriage is dissolved, the dissolution action must abate and the court can make no further orders with respect to property rights, spousal support, costs or attorney fees. (*Kinsler v. Superior Court*, supra, at p. 811, citing *In re Marriage of Shayman* (1973) 35 Cal.App.3d 648, 651 [111 Cal.Rptr. 11]; see also *In re Marriage of Williams* (1980) 101 Cal.App.3d 507, 510-511 [161 Cal.Rptr. 808].) On the other hand, when a judgment of dissolution has been entered and a party later dies, the court retains jurisdiction to adjudicate the reserved issues. This case falls within the category of cases where a judgment dissolving the marriage and reserving jurisdiction over remaining issues was entered before the party's death. Consequently, the trial court correctly resolved the jurisdictional issue by substituting decedent's estate as a party to the dissolution action and proceeding to adjudicate the reserved property issues.

After the decision in *Kinsler*, the Legislature adopted section 4515 providing for a bifurcated or separate trial for termination of marital status.

---

the judgment for which there is substantial evidence." (Hogoboom & King, *op. cit. supra*, at ¶ 15:30.)

Section 4515, subdivision (c), states: "A judgment granting a dissolution of the status of the marriage shall expressly reserve jurisdiction for later determination of all other pending issues." Having knowledge of the holding in *Kinsler*, the Legislature thus determined that in all cases where a judgment has been entered terminating marital status and a former spouse thereafter dies before determination of other pending issues, the family law court retains jurisdiction to determine those issues.

It could be argued that this rule should apply as soon as parties to a marriage separate. For example, the Legislature has provided in section 5118 that earnings after the date of separation are separate rather than community property, and the community interest in professional goodwill of a self-employed professional is also valued as of the date of separation. (See *In re Marriage of Green* (1989) 213 Cal.App.3d 14, 20-21 [261 Cal.Rptr. 294].) Similarly, section 5120.110, subdivision (c), concerning liability for debts provides that "during marriage" for that purpose does not include any period after the date of separation. We believe, however, that the Legislature has wisely chosen not to use the date of separation as the benchmark for determining whether jurisdiction continues under the Family Law Act, since this date is frequently in dispute and spouses commonly separate and then reconcile.

By contrast, there can be no dispute about the date of a judgment terminating marital status, or that after that date the parties no longer expect to receive the benefits available to married persons. This observation is borne out by several legislative enactments. Probate Code section 6122, subdivision (a)(1), provides that a dissolution of marital status revokes, by operation of law, any disposition or appointment of property made by will to a former spouse.[5] Section 4352 requires that every judgment dissolving a marriage include a notice to the parties that ending the marital state may automatically change a disposition made by will to a former spouse. Thus, the Legislature has specifically provided that the right of one spouse to inherit from the other changes upon dissolution of their marriage.

Under the present circumstances, the trial court was not only correct in holding it had jurisdiction to determine the marital rights of the parties to property, but accomplished justice and equity in doing so. It carries out decedent's intent that her share of the marital estate go to her heir under her will, rather than to her former spouse. Certainly, if the circumstances were reversed, we cannot believe Cliff would envision or desire the operation of

---

[5]Probate Code section 6122 changed the former case law rule that dissolution of marriage had no effect on the will of either spouse. (See *Estate of Patterson* (1923) 64 Cal.App. 643, 646 [222 P. 374].)

survivorship leaving his share of the marital estate to Constance unless this is "the rare case in which one of the spouses wishes to make the macabre gamble that he or she will be the survivor if one of the parties dies pending dissolution." (*Estate of Blair* (1988) 199 Cal.App.3d 161, 169, fn. 3 [244 Cal.Rptr. 627].) The result in this case is consistent with what the average decedent and former spouse would have wanted had death been anticipated. (See *Estate of Luke* (1987) 194 Cal.App.3d 1006, 1015 [240 Cal.Rptr. 84].)

### III

*Did the Family Law Court Err in Applying the Rules and Presumptions Applicable to the Division of Marital Property in Dissolution Proceedings?*

 Cliff argues there is nothing in the law which sanctions defeating the right of survivorship simply because a dissolution action has been filed. He goes on to argue that the court below erred in applying the rules and presumptions applicable to marital dissolution proceedings and that the "common law presumption" that the character of the property is as set forth in the title should have prevailed. (See generally, Hogoboom & King, *op. cit. supra*, at ¶ 8:11.) He contends it was improper to allow Tami to come in after the fact to "make decisions on behalf of a deceased, and elect to sever a joint tenancy."

Cliff's arguments overlook the effect of the judgment dissolving the parties' marriage on the determination of the issues in this case.[6] As we have seen, the existence of this judgment, entered before Constance's death, allowed the family law court to retain jurisdiction over the remaining issues in this case. The judgment of dissolution provides the compelling difference between the instant case and the case on which Cliff principally relies, *Estate of Blair*, *supra*, 199 Cal.App.3d 161.[7]

In *Blair*, husband and wife bought a house and took title as joint tenants. In the pleadings filed in connection with the dissolution of their marriage, they each indicated a belief that the house was community property. Wife died before a judgment of dissolution was entered which, as we have seen,

---

[6] He also overlooks the fact that even if this were true joint tenancy property, the court's orders affecting the property terminated the unities of interest essential to a joint tenancy. (See 5 Miller & Starr, Cal. Real Estate 2d, § 12:20 et seq.) This is consistent with the holdings of *Estate of Seibert* (1990) 226 Cal.App.3d 338 [276 Cal.Rptr. 508], *Estate of Asvitt* (1979) 92 Cal.App.3d 348 [154 Cal.Rptr. 713] and *Wardlow v. Pozzi* (1959) 170 Cal.App.2d 208, 210 [338 P.2d 564]; see also *Estate of Propst* (1990) 50 Cal.3d 448, 455 [268 Cal.Rptr. 114, 788 P.2d 628].)

[7] Another case on which Cliff relies, with facts and issues similiar to those here, has recently been granted review by the California Supreme Court. (*In re Marriage of Hilke* █ Cal.App.)

abated the marital dissolution proceeding. (*Estate of Blair, supra*, 199 Cal.App.3d at pp. 166-167.) Nevertheless, in the probate proceedings, wife's estate claimed the estate had a one-half ownership interest in the residence by virtue of wife's community interest.

The husband in *Blair* conceded that if his wife had survived and the parties were litigating their respective rights to their residence in the marital dissolution proceeding, the presumption contained in section 4800.1 would have operated and the residence would have been subject to equal division between the parties. However, husband stressed that the dissolution proceedings were terminated, and the presumption contained in section 4800.1 was not applicable to the probate proceedings.

The appellate court agreed with husband's position and held that the presumption in favor of community property contained in section 4800.1 did not apply outside the dissolution proceeding and that the "common law presumption" arising from the form of title would have to be applied in the probate proceeding. In other words, wife's interest in the residence would pass to husband by operation of law if, on remand, no termination of the joint tenancy could be established.

The court in *Blair* was obviously troubled by this result and acknowledged it was unlikely that parties who are awaiting a dissolution of their marriage "would envision or desire the operation of survivorship." (*Estate of Blair, supra*, 199 Cal.App.3d at p. 169.) The court urged the Legislature to amend section 4800.1 to apply the community property presumption to those cases in which a dissolution proceeding is pending. (*Id.* at pp. 169-170.)

Cliff fails to recognize that *Blair* clearly points to the path to be followed in this case and that its reasoning squarely defeats his argument that the common law form of title presumption (and not the presumption contained in § 4800.1) has to be applied. As *Blair* made clear, the presumption established by section 4800.1 applies in a dissolution action and property held in joint ownership is presumed to be community property. *Blair* made clear that the unfair result in that case would have been avoided if the dissolution action had *not* been terminated as a result of wife's untimely demise *before* the judgment of dissolution was entered. Our ability to achieve a fair and just result is not similarly hampered.

In light of the family law court's continuing jurisdiction to deal with the property issues in this marital dissolution case, it would be unreasonable and wholly inappropriate to limit the court's authority by not allowing it to use the rules and presumptions traditionally applied to dividing marital property

after a dissolution of marital status has been entered. The only conceivable reason to do so is because of Constance's death; but the law makes clear that once the family law court has continuing jurisdiction to deal with property issues, a party's death does not impair its ability to ascertain the nature of disputed assets using traditional community property concepts. (*In re Marriage of Shayman, supra,* 35 Cal.App.3d 648.)

The case of *Chirmside* v. *Board of Administration* (1983) 143 Cal.App.3d 205 [191 Cal.Rptr. 605] illustrates the point. In that case, the final judgment of dissolution did not adjudicate the parties' entitlement to the former husband's pension benefits. Five years later, husband died and his sister claimed the pension benefits as the designated beneficiary. Wife also made a belated claim for her community property interest in the benefits. The *Chirmside* court held that wife's community interest in one-half of husband's contributions to his pension during the course of their marriage could not be defeated simply because husband was no longer living.

Applying traditional community property concepts, the *Chirmside* court relied on *Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10]. *Henn* held a community asset that is left unadjudicated in the dissolution decree is subject to future adjudication and the parties, until adjudication, occupy the status of tenants in common no matter how the record title is held. The *Henn* rule, allowing subsequent litigation, is applicable where there was a partial division of the community property or, like the instant case, where there was a dissolution "unaccompanied by any property adjudication whatsoever." (*Henn, supra,* at p. 330.)[8] The *Chirmside* court found nothing in *Henn* limited its holding to living parties. The court went on to hold that under *Henn,* upon dissolution, wife's community interest in her husband's pension benefits became an undivided one-half interest as a tenancy in common with her former husband. His death could not operate to deprive her of the tenancy in common interest. (*Chirmside, supra,* 143 Cal.App.3d at p. 211.)

Similarly, in *Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148 [217 Cal.Rptr. 174], a former wife was allowed to assert a community interest in her deceased former husband's pension benefits and life insurance, which had named his current spouse as beneficiary. These assets were not divided in the judgment of dissolution entered 13 years earlier. The court reasoned that even though the pension benefits and life insurance were not divided at the time of dissolution, these assets still belonged to both parties as tenants

---

[8]The Legislature in enacting section 4353 has modified the *Henn* decision by permitting future litigation over unadjudicated community property or debts to occur by way of a motion in the family law proceeding, rather than by a separate civil action.

in common under the reasoning in *Henn.* The court stated: "It makes no sense to say [the parties] together owned their assets but at his death when the assets matured, they succeeded to [husband's] estate. The law demands the community property of the parties be evenly divided and allows the court to later award assets not adjudicated at the time of the dissolution. These benefits were community property. They were not divided. They still exist and [wife] has a right to her day in court to determine the amount of her interest." (*Id.* at p. 156.)

*Bowman* was followed by *In re Marriage of Powers* (1990) 218 Cal.App.3d 626 [267 Cal.Rptr. 350]. *Powers* examined section 4800.8, enacted by the Legislature in 1987, which empowers a court to make "whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits . . . ." Four years after former wife's death, her estate made a claim on her behalf under section 4800.8 for her community share of pension benefits that had not been adjudicated in the parties' dissolution. Husband argued that any interest wife had in his pension plan was terminated by her death and that section 4800.8 was enacted to prevent long-term *living* spouses from being deprived of their community property interest in pension benefits. Significantly for purposes of the instant case, the court rejected this argument, recognizing the injustice in depriving the deceased spouse the right "to bequeath by will his or her community property interest in the surviving spouse's pension plan." (*Powers, supra,* at p. 641.) The court ordered husband's employer to pay wife's estate any benefits due, reasoning the "basic objective of the statute is not dependent on whether the nonemployee spouse is living or dead at the time these rights accrue."[9]

Several features of *Chirmside, Bowman* and *Powers* are relevant to the determination at hand. First, one party's community property interests were not terminated by virtue of the other party's death. Second, each court applied the presumptions and principles used in dissolution proceedings to assets that had not been adjudicated in the parties' dissolution. Third, the characterization of the ownership of an asset at the time of one party's death did not override the other party's existing community property rights because by operation of law the unadjudicated community asset had become an asset owned by both parties as tenants in common. Fourth, and most importantly, *Powers* recognized that a party's interest in unadjudicated community property is not terminated by that party's death and that it would be

---

[9]The result in *Powers* may no longer be the law. See *Ablamis* v. *Roper* (9th Cir. 1991) 937 F.2d 1450, holding that federal law prevails over section 4800.8 where the nonemployee spouse predeceases the employee spouse.

unjust to deprive the deceased party's estate of its rightful share of the community asset.

In light of the fact that the family law court had continuing jurisdiction to adjudicate the rights of the parties with respect to marital property, we perceive no justification for denying Constance's estate the benefit of the presumptions and principles applicable to marital dissolution proceedings. Despite Cliff's protests to the contrary, our decision does not create any new community property interests nor does it allow a third party to come in after the fact to create a property interest that did not exist before. We simply recognize and preserve the interest Constance had in the assets of the marital community, existing upon dissolution, that we conclude was not extinguished by her death.

The judgment is affirmed.

Haning, J., and Chesney, J.,* concurred.

---

*Judge of the San Francisco Superior Court sitting under assignment by the Chairperson of the Judicial Council.